trial that he signed it, the fact of his having signed it is sufficiently shown.

3. LIMITATION OF ACTIONS, § 11*—*when writing an evidence of indebtedness to which ten-year limitation applicable.* An instrument in writing addressed to one party and signed by another wherein the signer, in substance, acknowledges that he, during several preceding months, collected various sums of money, aggregating a named amount, belonging to the addressee which he had not turned over to the addressee and wherein the signer also states that "he will try his utmost to repay," is an evidence of indebtedness in writing to which the ten-year limitation provided by section 16 of the Limitations Act (J. & A. ¶ 7211) applies.

4. LIMITATION OF ACTIONS, § 19*—*when claim of set-off on written evidence of indebtedness barred.* In an action on a written evidence of indebtedness commenced more than five years after its date, set-offs to which defendant claims to have been entitled at the date the instrument was executed are barred.

5. EVIDENCE, § 319*—*when parol evidence inadmissible to contradict and vary written instrument.* In an action on a written instrument of indebtedness, evidence of defendant that he was entitled to have set off certain commissions earned before the date of the instrument are inadmissible.

M. D. Kern et al., Appellees, v. Western Life Indemnity Company, Appellant.

Gen. No. 19,823.   (Not to be reported in full.)

Appeal from the Municipal Court of Chicago; the Hon. FREDERICK L. FAKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed March 23, 1915. Rehearing denied April 8, 1915.

## Statement of the Case.

Action of the first class by M. D. Kern, N. H. Kern and Katie Ottinger, plaintiffs, against Western Life Indemnity Company, a corporation, defendant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The action was based on the following instrument in writing, a copy of which was filed with the original declaration:

"KNIGHTS TEMPLARS AND MASONS LIFE INDEMNITY COMPANY,
Chicago, Illinois.

THIS CERTIFIES, That *the amount which may be payable at the death of the insured*, under and by virtue of a certain policy, No. 13551, upon the life of Peter Kern issued or assumed by the Life Insurance Company of Pennsylvania, *will be assumed* by the Knights Templars and Masons Life Indemnity Company, *when* a premium payment shall have been made on said policy to said Knights Templars and Masons Life Indemnity Company, and said premium shall have been duly acknowledged by a receipt signed by the General Manager of said Knights Templars and Masons Life Indemnity Company.

Executed at the home office of the Company at Chicago, Illinois, this 20th day of April, 1905.

E. S. ROSENFELD,
General Manager."

The original declaration consisted of two special counts and the common counts. On May 6, 1909, the two special counts were superseded by an "amended" count and an "additional" count filed by leave of court.

The amended count alleges, in substance, that on October 20, 1900, the I. O. O. F. Mutual Life Insurance *Society* of Pennsylvania by its policy of insurance, No. 21,732, insured the life of Peter Kern in the sum of $4,000, and that this policy was issued in consideration of the surrender of policy No. 14,897 (issued by the same Society and dated May 10, 1899) and in consideration of the payment of a premium of $10.68 each month in advance on or before noon of the 20th day of each calendar month during the continuance of the policy, and subject to the terms and conditions of the policy which were set out. It further alleges that on

April 22, 1901, the plaintiffs were made beneficiaries under said policy; that thereafter, on October 23, 1903, the Mutual Life Insurance *Company* of Pennsylvania, by a certificate or policy, No. 13,551, assumed the liability of said *Society* under certain conditions which were set out; that thereafter, on April 20, 1905, the defendant, then known as the Knights Templars, etc., Company, in consideration of the premises, made and delivered its certain certificate, whereby, in consideration that said Peter Kern should make a premium payment on said policy, No. 13,551, to said Knights Templars, etc., Company, and cause said payment to be acknowledged by a receipt signed by its general manager, it "assumed and agreed to pay the amount which might be payable at the death of said Peter Kern under and by virtue of said policy, No. 13, 551"; that said premium payment was duly made and duly acknowledged by the general manager of the defendant company, and that afterwards the defendant changed its corporate name and continued to do business as, and is now known as, the Western Life Indemnity Company. Full performance of the conditions of all of said policies, including the payment of all premiums due down to and including June 19, 1906 was averred. It is further alleged that, on June 19, 1906, during the lifetime of Peter Kern, and three years' full premiums having been paid on said policy and the same being still in full force and effect, said Peter Kern tendered the said policies, and each and all of them, to the defendant Company, and "elected to surrender the same and receive therefor extended life insurance for the face value of said contract, or policy, for the number of years and months specified in the table therein contained, to-wit, for the full time of 1 year and 360 days;" that within said period of one year and three hundred and sixty days, to wit, on October 28, 1907, said Peter Kern died at Knoxville, Tennessee, at the age of seventy-two years; that proof of death was furnished in due

time to the defendant Company and suit brought within one year from his death; and that Peter Kern during his lifetime performed and complied with, and plaintiffs since his death have performed and fulfilled, each and all of the conditions, promises and stipula-. tions in said policies and the agreement contained; yet the defendant has refused to pay said sum of $4,000, or any part thereof, to the damage of plaintiffs of $4,000, etc.

In the additional count it was alleged, in substance, that before the making of the promises by the defendant hereinafter set forth, the said I. O. O. F. *Society* of Pennsylvania did insure the life of said Peter Kern, and by its policy did provide for extended insurance in case of lapse after the payment of three full years' premiums; and that before the making of said promises by the defendant, the said last mentioned policy was assumed by said Mutual Insurance *Company* of Pennsylvania; and that thereupon, in consideration of the premises and that said Kern should make a certain premium payment to the defendant on said last mentioned policy, the defendant, then doing business as the Knights Templars, etc., Company, entered into a certain agreement with said Kern, for the benefit of plaintiffs which is the instrument set out above. And it is further alleged that said premium payment was made and the defendant's general manager acknowledged said payment by his receipt; and that said insurance was made payable to plaintiffs as beneficiaries; and that said Knights Templars, etc., Company afterwards changed its name, etc.; and that said Peter Kern paid all premiums on or before the 20th day of each calendar month "until and including the 19th day of June, 1906;" and that on said June 19, 1906, said Peter Kern, having paid three full years' premiums on said policies, tendered the policies to defendant and elected to have said extended insurance for said term of one year and three hundred and sixty days;

and that on October 28, 1907, and within said extended insurance term, said Peter Kern died at Knoxville, Tennessee; and that proofs of death were in due time made, and that Peter Kern and the plaintiffs had at all times performed all the conditions of the policies, etc; to the damage of plaintiffs of $4,000, etc.

A general and special demurrer to the amended and additional counts were filed by defendant June 4, 1909, but on October 11, 1909, by stipulation, it was ordered that said demurrer be withdrawn, and defendant filed a plea of the general issue to said counts, and also a plea to the effect that it was beyond the powers of defendant to grant said Peter Kern the extended insurance for the number of years and months in said counts mentioned. To this plea of *ultra vires* plaintiffs filed a replication, to which defendant demurred. On April 30, 1910, the court carried the demurrer back to defendant's plea of *ultra vires* and sustained the demurrer to said plea. Subsequently defendant withdrew its plea of general issue and filed an amended plea of *ultra vires,* to which plaintiffs replied; defendant demurred to the replication; and on July 27, 1911, said demurrer was again carried back and sustained to the plea. Subsequently defendant filed another amended plea of *ultra vires,* to which plaintiffs demurred, and on May 28, 1912, this demurrer was sustained. Subsequently defendant, having obtained leave, filed a plea of general issue to plaintiffs' declaration and each count thereof.

By leave of court the plaintiffs on February 25, 1913, amended their ''additional'' count by inserting, immediately following the allegation that Peter Kern paid all premiums ''until and including the 19th day of June, 1906,'' the following:

''Except for the month of May, 1906, and the payment for that month was delayed a few days owing to confusion and doubt as to the person to whom, and the place where, said premium should be paid, and the time when it should be paid, resulting from an attempt

on the part of the defendant company to re-insure said Peter Kern in another company, and also owing to conflicting notices regarding the payment of such premiums. Said premium was tendered to the defendant company on, to-wit: May 30th, 1906, and again on the 4th day of June, 1906—but although the defendant was in duty bound to accept said premiums when presented in spite of said delay, yet it refused so to do.

"And afterwards, on the 19th day of June, 1906, the said insured again tendered in legal tender said May premium as aforesaid, and as an alternative offered to surrender said policy for the purpose of having issued to him extended insurance for the period of one year and three hundred sixty days, in lieu thereof—both of which offers or tenders were refused by the defendant company, which assigned as the only reason for said refusal that said insurance had been forfeited for non-payment of said premium promptly on the 20th day of May, 1906."

The cause came on for trial April 8, 1913, before a jury, and it was ordered that defendant's plea of the general issue, theretofore filed, stand as its plea to said additional count as amended. The jury returned a verdict April 10, 1913, finding the issues against defendant and assessing plaintiffs' damages at the sum of $1,141.04. On May 7, 1913, the court overruled defendant's motions for a new trial and in arrest of judgment, and entered judgment upon the verdict, which judgment defendant by this appeal seeks to reverse.

The evidence disclosed the following facts: Under date of May 10, 1899, said I. O. O. F. *Society* issued a policy of life insurance, No. 14,897, to Peter Kern. This policy was not introduced in evidence. On October 20, 1900, the policy was surrendered and exchanged for a new policy, No. 21,732, in the same society. This policy was introduced in evidence. By it the society, in consideration of the payment of a premium of $10.68 on or before the 20th day of each calendar month and subject to many conditions specified, agrees to pay upon the death of Peter Kern to Henrietta Kern,

wife, if living, and if not living, to the insured's administrators or assigns, within ninety days after the receipt and approval of proofs of death, etc., a "gross amount" of $4,000. By the seventh clause of the printed conditions of the policy, however, it is provided that this contract is made as a reinsurance of the risk under policy No. 14,897; that the insured may pay as a premium $10.68; that should such premium amount to less than would be required by the "table of premium rates," for the attained age of the insured, for the "gross amount" of insurance expressed, he may elect to pay premiums in conformity with such table, and that should such election not be made, the liability of the society "shall not exceed such sum as the amount paid by the insured will purchase according to the premiums prescribed by said table of premium rates." Under a heading, "Annual and Monthly Installment Premiums for each $100 Insurance payable according to the present attained age of the insured," the monthly instalment premium at the age of sixty-four years was fixed at 97 cents. Peter Kern was born on October 31, 1835, and he was sixty-four years of age at the date of the insurance of the policy, and, as the monthly premium was $10.68, the amount of insurance this premium would purchase at the age of sixty-four is $1,101.03. By the ninth clause it is provided that if this policy shall become void by the violation of any stipulation all payments shall be retained by the society, except that, if after three full years' premiums shall have been paid it shall become void solely by the nonpayment of any premium when due, the owner will be entitled, on legal surrender of this policy within thirty days thereafter, (1) to receive a certificate for extending this insurance for the face value of this policy for the number of years and months specified in a "table of surrender values," upon the third page of the policy, provided that if death occurs during the term covered by such extended insurance, there shall

be deducted from the amount payable the amount of premiums which would have been paid had there been no lapse; or (2) to receive a paid up life policy for the amount specified in said table; or (3) to receive the amount specified in said table as the cash value of this policy. In said table on said third page it appeared that at the end of the fifth year the period of extended insurance would be for one year and three hundred and sixty days. By the eleventh clause it is provided (a) that after the policy had been continuously three years in force, any surplus belonging to it, as determined by the society, shall be credited hereto annually; and (b) that at the death of the insured, any surplus then standing to the credit of this policy shall be payable hereunder in addition to the amount that would otherwise be due; and (c) that providing there is no indebtedness standing against this policy, the insured may have any surplus credited to this policy applied in reduction of premiums hereon. Attached to said policy, No. 21,732, is a rider, signed by the president and secretary of the society, dated April 22, 1901, to the effect that in conformity with an application of the insured the policy is made payable to the plaintiffs (naming them and describing them as the daughters of the insured).

After said policy had been in force for a period of more than three years, it was exchanged for a new policy or certificate, No. 13,551, issued by the Mutual Life Insurance *Company* of Pennsylvania, under date of October 23, 1903. This policy was introduced in evidence and on its face it is stated that said *company*, in accordance with the terms of an agreement "hereon endorsed," insures the life of Peter Kern "for the same amount at death as was payable under policy, No. 21,732," issued by said *society "as determined in accordance with clause 7* of the privileges and conditions endorsed on *said* policy. The 'table of premium rates' referred to in *said* clause is the table headed

'Annual and Monthly Premiums for each $100 Insurance Payable According to the Present Attained Age of the Insured.' The amount of this insurance, unless changed by the insured, is payable to the same beneficiaries as are named in said policy. The premium on this insurance is $10.68, payable  *  *  *  on or before the 20th day of each month in each year during the continuance of this insurance.  *  *  *  This certificate shall be referred to as Policy No. 13,551." On the face of this certificate or policy there were printed in stencil the words: "Attach this to your policy." The agreement referred to as being "hereon endorsed" was printed in fine print on the back of the certificate or policy, and purports to be an agreement between said I. O. O. F. Society and said Mutual Life Company "and any member of the Society who shall accept the terms hereof, hereinafter called Insured." It is dated July 29, 1903, and the signatures (printed) of said society and of said company, by their respective secretaries, appear. Beneath the signatures is a table or schedule, headed "Annual and Monthly Premiums for each $100 Insurance payable according to the present attained age of the Insured." In said table the monthly premium at age of sixty-four years is fixed at 95 cents, at the age of sixty-five years at 99 cents, at the age of sixty-seven at $1.10 and at the age of sixty-eight at $1.16. In the first clause of said agreement it is stated that the company insures the life of the insured "in the amount which the premium paid by the Insured to the Company will pay for at the *attained* age of the Insured according to the Premium Schedule hereto attached; and hereby promises to pay *  *  *  the said amounts unto the beneficiary named *  *  *  within 90 days after the receipt of satisfactory proofs of death of the Insured." This provision is seemingly in conflict with the face of the policy as to the amount of the insurance to be paid upon the death of the insured, but by the eighth clause of the

agreement it is stated that "if the premium paid by the Insured to the Company shall be the same as that now being paid by him to the *Society*, the net amount of insurance payable hereunder *shall not be less than the amount payable under the present contract of insurance with the Society, as determined by Section 7 of the Conditions endorsed on said contracts.*" In the third clause of said agreement it is stated that "Provided the Insured's policy has been continuously one year in force in *Society*, the *Company* hereby agrees upon the acceptance by the Insured of this agreement *to pay to the Insured one-twelfth of the first annual premium* payable by him or her hereunder to the Company." It appears that policy, No. 21,732, was continuously in force for more than one year in the I. O. O. F. *Society* before the issuance by the *Company* of said policy, No. 13,551, but it does not appear from the evidence that the *Company* ever paid to Peter Kern said one-twelfth of said first annual premium. In the fifth clause of said agreement it is provided that "The *non-payment* by Insured when due of any sum due hereunder *shall render this agreement void,* and *shall discharge the Company from all liability* hereunder to the Insured, and, in such event, all payments hereunder made by the Insured shall be forfeited."

The provision, contained in the ninth clause of the policy, No. 21,732, above mentioned, relative to the privilege of extended insurance, etc., in case of the nonpayment of any premium when due, is not contained in said policy, No. 13,551. In the seventh clause of said agreement it is provided that "notice of the amount and time of payment of any premium due the Company hereunder is given by the Company and accepted by the Insured *by the payment of one such premium hereunder. Any other notice* which may be required by statute, or otherwise, *is expressly waived,* provided, that notices may at its election be sent out

by the Company, but the Company shall not be responsible for the *omission or miscarriage* of any such notices." In the nineteenth clause of said agreement it is provided that proofs of death must be furnished within six months after the death of the insured, and that no suit against the Company upon the policy shall be brought after one year from the time of the Insured's death. It appears from the evidence that on March 10, 1904, said policy, No. 13,551, in said Mutual Life Insurance Company, was assumed by the "Life Insurance Company of Pennsylvania" by written memorandum sent to said Peter Kern and received by him. It further appears that Peter Kern accepted said policy, No. 13,551, and thereafter paid premiums thereon either to said Mutual Life Company or said Life Company, until said policy was assumed by the defendant as hereinafter mentioned.

On April 20, 1905, the defendant Company, then doing business under the name of Knights Templars and Masons Life Indemnity Company (which name was afterwards changed to Western Life Indemnity Company), executed and delivered to Peter Kern the instrument in writing first above mentioned, a copy of which was filed with the declaration. The original was introduced in evidence. By this instrument the defendant agrees that, *when* a premium payment on said policy, No. 13,551, shall have been made to defendant and acknowledged by a receipt signed by defendant's general manager, "the amount which may be payable at the death of the insured," under said policy, No. 13,551, issued or assumed by said Life Insurance Company of Pennsylvania, "will be assumed" by the defendant. It appears from the evidence that a premium payment was made by Peter Kern to defendant and a receipt issued therefor signed by defendant's general manager. It further appears that all subsequent premiums, up to and including the premiums payable on or before April 20, 1906, were paid

by Peter Kern to defendant, but that the next premium, due May 20, 1906, was not paid when due, and that during the month of April and May, Peter Kern was not in good health, and that his son, John P. Kern, was looking after his business affairs, including his insurance matters, at Knoxville, Tennessee, where both father and son then resided. It further appears that said instrument in writing, bearing date April 20, 1905, was forwarded to Peter Kern about two months before its date. It was inclosed in a letter to him, signed by the general manager of defendant and dated February 18, 1905, in part as follows: "Kindly attach the inclosed rider to your policy. By this agreement, this Company assumes liability upon your policy upon receipt from you of your premium, which will be due as shown by the inclosed premium notice." Miss M. D. Kern, one of the plaintiffs and one of the beneficiaries named in the policy, testified that she was the sister of the other plaintiffs and beneficiaries, and that her father "commenced paying money" to defendant about March 15, 1905. Attached to her deposition was the following receipt (which was introduced in evidence), signed by the general manager of defendant: "3-15-1905. Received from Peter Kern, as premium on Policy No. 13,551 to Apl. 20, 1905, $10.68. *Paid Apr. 7-05.* Your next premium will be due and payable on or before April 20, 1905." Inasmuch as premiums were payable monthly on or before the 20th day of each month, it thus appears that the premium due March 20, 1905, was not actually paid until April 7, 1905, but that the defendant accepted it. On March 6, 1906, the defendant Company, by George M. Moulton, its president, wrote Peter Kern asking for his proxy to vote at a meeting of policy holders to be held March 19th, on the subject of the proposed reinsurance in, or transfer of the policies to, the American Mutual Life Insurance Company of Chicago, and on April 30, 1906, defendant sent to Peter Kern a copy of the pro-

posed contract of transfer, with a letter, signed by the American Company and addressed to the policy holders or members of the defendant Company, giving ten days grace for payment of first premiums, due May 1, 1906, and stating that "premium notice will be sent to each member prior to May 1, 1906." It appears that this reinsurance contract with said American Company was not consumated, and *on May 30, 1906,* John P. Kern found in his father's mail a printed letter, dated Chicago, May 3, 1906, and signed by said George M. Moulton, president of defendant, on the letter head of defendant, stating that the "notice sent you under date of April 30th by the American Mutual Life Insurance Company of Chicago is void for the reason that said American Company did not qualify," requesting that Peter Kern "destroy the copy of reinsurance contract   *   *   *   as the contract is noneffective," and further stating: "Continue your present Policy with the Western Life Indemnity Company by payment of assessments and dues, of which you will receive *timely notice,* as heretofore. Notice of May assessments enclosed herewith. Cash credits on deposit with the Company from members will be applied as heretofore for payment of assessments and dues as the same mature.   *   *   *   Remittances must be in negotiable funds at par value in Chicago. If you use your personal check add ten cents for collection as required by bank regulations." On the same day, May 30, 1906, John P. Kern mailed to defendant a check of the Peter Kern Company, payable to the order of defendant, for $10.78, being for the amount of the May premium, $10.68 plus 10 cents for cost of exchange. John P. Kern testified that in the months of April and May, 1906, he was looking after the payment of premiums on his father's insurance in the defendant Company, and further testified, in response to the question how it happened that he overlooked

sending a check for said May, 1906, premium, that "on account of the confusing and conflicting notices received about the changes which were going into effect, I did not know when to send them nor to whom."

On June 2, 1906, the defendant, in a letter signed by said Moulton and addressed to Peter Kern, returned said check *"for the reason* that your policy, No. 13,551, *is forfeited for the nonpayment of the May premium* which was due on May 20th." On June 4, 1906, John P. Kern wrote George M. Moulton, president of defendant, in part as follows: "I am surprised to learn that the policy is forfeited as you state. I appeal as a Templar and 32° S. R. Mason to you  *  *  *  to reconsider this decision. In Father's absence I overlooked the notice and it did not come to hand until Thursday last, and mailed the check at once. I can assure you it was an oversight.  *  *  *  I beg of you that you will accept the enclosed checks, one dated May 18th for $11.93, which is a dollar for interest for the ten days, and another check for June for $10.93, this includes 25 cents for bank collections." On June 7, 1906, Mr. Moulton, president, returned the checks in a letter addressed to John P. Kern, saying in part: "Said checks are herewith returned for the reason that said policy is forfeited for the non-payment of premium due on the 20th day of May. Your father is beyond the age at which re-instatement of his policy can be considered under the rules of this Company." Thereupon John P. Kern consulted an attorney, Charles H. Brown, in Knoxville, Tennessee; and subsequently Brown was employed to make a trip to Chicago and interview the officers of defendant. On June 19, 1906, Brown called on defendant and first made a legal tender of the amount of the premiums for May and June. The defendant declined to receive the money or to reinstate Peter Kern as a member, and solely for the reason that he had failed to pay the May premiums on May 20th. Then Brown, in the alterna-

tive, tendered the policies, and all riders and papers connected therewith, and requested that defendant allow Peter Kern extended insurance, as provided in the ninth clause of policy, No. 21,732, issued by the I. O. O. F. Society, above mentioned. This the defendant also refused to do,—Moulton, president, at that time saying: ''We did not assume any policy on the life of Peter Kern which provided for extended insurance,''—and Brown left, taking the policies and papers away with him. Moulton, and a clerk in the office of defendant, testified that Moulton's said letter to Peter Kern, dated May 3, 1906, was mailed on the day of its date, as well as several thousand similar letters addressed to other policy holders. A mailing clerk of defendant also testified that she caused to be mailed to Peter Kern a notice to pay the May premium, said notice being dated May 7, 1906.

On October 28, 1907, Peter Kern died at Knoxville. Plaintiffs, as beneficiaries, in apt time made proofs of death to defendant and claimed the insurance. Defendant denied liability and refused to pay plaintiffs anything and plaintiffs, within one year from the date of Peter Kern's death, on September 14, 1908, commenced the present suit.

Counsel for plaintiffs, in his brief and argument, stated that the *amount* of the jury's verdict was not in dispute and that the same was arrived at as follows:

"Premium, $10.68, divided by 97, equals
(principal)                                    $1,101.03
Less 18 premiums unpaid, till death        192.24

                                             908.79
Add interest from proof of death, 5%       232.25

Amount of verdict                        $1,141.04"

The court refused defendant's motions, made at the close of plaintiffs' case, and again at the close of all the evidence, to instruct the jury to find the issues for the defendant, and defendant excepted.

The court instructed the jury orally, in the course of which charge the jury were told that "policy No. 13,551, and the contract of insurance assumed by the defendant on the life of Peter Kern from the Life Insurance Company of Pennsylvania, did not contain nor include any provision for extended insurance, such as is sued upon in said declaration, and that, therefore, the plaintiffs cannot recover in this action against the defendant upon any theory of extended insurance."

The court also instructed the jury as follows:

"If you find from the evidence that after the issuance of the policy in question and its assumption by the defendant company, said defendant promised the insured that he would receive timely notice of assessments and dues, then in such event the insured is entitled to a reasonable time after the receipt of such notice, if any, of assessments or dues, within which to pay the same and payment or tender of such payment, if there is such, within a reasonable time after receipt of such notice, if any, is in apt time and valid and sufficient to keep in force the insurance in question."

"You are instructed that if at the time of the alleged lapse or forfeiture of the policy in question the defendant company had in its hands any funds of the insured, not reserve funds, or was indebted to the insured in any sum apart from the reserve fund, if there was any, it could not lawfully forfeit the policy of insurance without first applying such funds, if there were any, or moneys, if there were any, in payment of the premiums, if any were due."

The defendant, by its counsel, objected to the giving of these last mentioned instructions on the ground that there was no basis, either in the issues formed by the pleadings or in the evidence for either instruction.

From a judgment for plaintiffs for $1,141.04, defendant appeals.

THOMAS J. GRAYDON, for appellant.

CHARLES HUDSON, for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

## Abstract of the Decision.

1. INSURANCE, § 313*—*when delay in payment of premium not ground for forfeiture of policy.* In an action on a life insurance policy which provides that the policy shall be forfeited if the premiums are not paid when due, where there is evidence tending to show that the nonpayment of a premium when due was owing to the receipt by insured's agent of conflicting notices as to when and to whom such payment should be made; that the insurer had promised to send timely notice of the premium and that immediately upon the receipt of a definite notice to whom and where such premium was to be paid, insured, through his agent, tendered the amount of the premium which was refused, the evidence is sufficient to support a finding that the delay was excusable and that defendant was estopped to claim a forfeiture.

2. INSURANCE, § 315*—*when funds of insured in hands of insurer to be applied on premium.* In an action on a policy of life insurance, where the evidence tends to show that at the time the insurer claimed the right to forfeit the policy for the nonpayment of premiums it had, or should have had, in its possession moneys due the insured in the amount of the premium, such moneys should be applied to the payment of the premium before declaring a forfeiture.

3. INSURANCE, § 690*—*when instructions not prejudicial in action on insurance policy.* Evidence in action on life insurance policy examined and *held* to warrant the giving of instructions as to diligence in payment of premiums and duty of insurer to apply funds of insured to payment of premium.

4. WITNESSES, § 77*—*when agent of insured competent in action on life policy.* In an action on a policy of life insurance, an agent of the insured who looked after the latter's insurance matters is a competent witness to prove the existence of his agency.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.