MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *v.*
BRELAND.

[78 South. 362, In Banc.]

1. INSURANCE. *Surrender value of automatically paid-up policy.*
   Where by insured's failure to pay the annual premium on a three
   thousand dollar life policy it automatically became, according
   to its provisions, a paid-up policy for six hundred dollars.   In
   such case the policy-holder had no right upon the lapse of the
   old policy to take down in cash the amount of the reserve ex-
   cept in the manner specifically provided by the old contract, and
   having made no election to accept the real cash surrender value
   of the old policy within the time stipulated by the contract, when
   the policy became a paid-up policy for six hundred dollars, the
   insured no longer enjoyed the right to withdraw his reserve in
   cash or to compel the company to pay anything prior to his
   death.

2. PLEADING. *Complaint. Sufficiency of general demurrer.*
If the complainant under any view has stated a case in his bill a general demurrer thereto should be overruled.

3. INSURANCE. *Action on policy. Pleading.*
In a suit in chancery, seeking to have the court decree that accrued dividends and surplus thereon, which were alleged to have been in fact earned and in the company's possession, be applied to the payment of a premium, for nonpayment of which the company claimed a forfeiture of the policy, the bill was not defective in not expressly charging that any portion of the surplus or the dividends had in fact been set·aside or placed to the credit of the policy, since it would be presumed that the company had complied with its policy contract to declare dividends and ascertain and set apart surplus annually.

4. INSURANCE. *Dividends. Application.*
Although a life insurance policy provides for forfeiture of the policy for nonpayment of annual premiums, where it also provides that dividends shall, at insured's election, annually be either paid in cash or applied to the payment of premiums or applied to the purchase of paid-up additions or left to accumulate a further provision giving the company, in case insured makes no election, the option to apply the dividends to the purchase of paid-up additions, applies only where the insurance is being kept in force, and, where insured is in default for nonpayment of premiums, the dividends are applicable to payment of such premiums.

APPEAL from the chancery court of Harrison county.
HON. W. M. DENNY, JR., Chancellor.

Suit by Mrs. Harriet Breland against the Mutual Life Insurance Company of New York. From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*R. H. & J. H. Thompson* and *Frederick L. Allen,* for appellant.

*White & Ford,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellee, Mrs. Harriet Breland, widow of one Jacob E. Breland, deceased, sued in equity to recover upon

a policy of life insurance, issued by appellant, Mutual Life Insurance Company of New York, on the life of said Jacob E. Breland in the sum of two thousand dollars. A demurrer interposed to the bill was over-ruled by the chancellor, and from the decree overruling the demurrer appellant prosecutes this appeal.

The controversy grows out of the following state of facts, briefly outlined: Jacob E. Breland before his marriage to the complainant obtained from appellant a policy of life insurance in the amount of three thousand dollars. This first policy provided that after three full years' premiums were paid the policy, upon nonpayment of any subsequent premium, would become a nonparticipating paid-up policy in a sum depending upon the number of premiums paid by the insured. It is conceded that the insured failed to pay the annual premium due October, 1904, and on that account the policy automatically became a paid-up policy for six hundred dollars payable on the death of the insured, Jesse Breland, father of the insured, was named as the beneficiary. Approximately four years after the old policy became a paid-up policy for six hundred dollars, the agent of the insurance company entered into negotiations with Jacob E. Breland looking towards a surrender and release of the old policy and the taking out of a new policy for two thousand dollars, payable to the insured's wife, Harriet Breland, the complainant herein. It is averred in the bill that the agent represented to the insured that the old policy had a cash surrender value of one hundred forty-eight dollars and twenty cents, which was a sum sufficient to pay two annual premiums upon a new policy for two thousand dollars and to give the insured in cash sixteen dollars and forty-four cents; that upon representations made by the agent to the insured the latter accepted the statements of the agent as to the value or worth of the old policy, and agreed to take out, and did accept and receive, a new policy for two

thousand dollars, payable to his wife, a receipt for two annual premiums, and sixteen dollars and forty-four cents in cash from the company. The new policy bears date November 12, 1909, and the stipulated premium is sixty-five dollars and eighty-eight cents. It is further shown that Jesse Breland, the beneficiary in the old policy, was a party to the agreement, and joined the insured in executing to appellant a full acquittance and release of the old policy. It is further charged that the actual cash surrender value of the first policy, if calculated according to the usual methods or rules for ascertaining such values, was the sum of two hundred and fourteen dollars and twenty-two cents, and not one hundred and forty-eight dollars and twenty cents, as represented by the agent of appellant; that the insured was ignorant of the true worth or value of the policy, and was not conversant with life insurance or the values of life insurance policies; that this representation of the agent as to the value of the policy was either a fraud on the rights of the insured, or that the second policy was accepted under a mistake. The appellee further charges that the insured died August 29, 1914, without making any payment of premiums further or in addition to the two premiums for which receipt was issued by appellant at the time the policy was delivered; that the third premium was due and payable November, 1911, and was not paid; that at the time the third premium became due appellant had in its hands fifty-six dollars accrued dividends which the policy had earned, and which had not been paid to the insured; that in addition to these dividends there had accrued at that time thirty-five dollars and forty-five cents as the insured's proportion of surplus. It is then charged that the duty devolved upon appellant to apply this dividend and the insured's share of the surplus toward the liquidation of the premium due November, 1911; that thirty days' grace was allowed for the payment of this premium, and that the company

had ample opportunity, and that it was the duty of the company, to apply the funds in its hands belonging to appellant toward the payment of this premium and thereby avert a forfeiture. The policy sued on contains, among other provisions, the following:

"Participations.—The proportion of the surplus accruing upon this policy' shall be ascertained and distributed annually and not otherwise.

"Amount of insurance payable at death. Premiums for twenty years or until prior death. Annual dividend period.

"Dividends.—Dividends at the option of the insured or the owner of this policy shall on the 12th day of November each year be either—

"(1) Paid in cash; or,

"(2) Applied toward the payment of any premium or premiums; or,

"(3) Applied to the purchase of paid-up additions to the policy; or,

"(4) Left to accumulate to the credit of the policy with interest at the rate of three per centum per annum and payable at the maturity of the policy, but withdrawable on any anniversary of the policy.

"Unless the insured or the owner of the policy shall elect otherwise within three months after the mailing by the company of a written notice requiring the election of one of the four above options, the dividends shall be applied to the purchase of paid-up additions, as per option (3). Such paid-up additions may be surrendered at any time for a cash value which shall not be less than the original cash dividends, as per option. (1)."

The bill charges that if the insured had received the true or actual value of the old policy there would have been sufficient funds to pay three annual premiums upon the new policy, and in that event, under the extended insurance feature or provision of the new policy, the contract would have been in full force and effect

on the date of the death of the said Jacob E. Breland, and that if the company had applied the funds in its hands toward paying the third annual premium, the same result would have been accomplished. The prayer of the bill is:

"That the said policy may be decreed to be reformed by this honorable court so as to carry into effect the contract between the said Jacob E. Breland, deceased, and the defendant company in accordance with the terms of said policy," etc., and "that the said contract of insurance when so reformed shall be declared in equity to have been in full force and effect on the date of the death of said Jacob E. Breland, under the extended insurance feature thereof."

There is a further prayer that the court decree that appellant in fact had in its hands on November 12, 1911, a sum sufficient to pay the third annual premium, and consequently to decree that the policy was in force on the date of the death of the insured, and that the beneficiary, the complainant, be awarded the full sum of two thousand dollars with interest.

Without setting out the grounds of the demurrer, the sufficiency of the bill is questioned and complainant's right to recover at all challenged. The bill does not seek a reformation of the new policy, the one sued on, as a contract of insurance; no objection is made to the terms and provisions of the policy. It is nowhere intimated that there is any mistake as to the amount of the insurance or any of the material provisions of the policy fixing the premium and defining the rights and obligations of the parties. The real end sought by the bill is a recovery of an additional sum of money representing the true value of the old policy surrendered, and the application of this additional sum to the payment of the third annual premium on the new policy. Does the bill, then, in its averments of fraud or mistake state a case? Our conclusion is that it does not. In the first place the old policy had no "cash surrender

value" in the sense in which that term is usually employed. Its value depended upon the age or life expectancy of the insured and the real need by him of ready money or cash at the time the agreement was made. The policy-holder had no right upon the lapse of the old policy to take down in cash the amount of the reserve except in the manner specifically provided by the old contract. He made no election to accept the real cash surrender value of the old policy within the time stipulated by the contract, and when the policy became a paid-up policy for six hundred dollars the insured no longer enjoyed the right to withdraw his reserve in cash or to compel the company to pay anything prior to his death. Conceding for the argument that the old policy was surrendered for a sum less than its true worth, the discrepancy is not so very much or unconscionable, and no facts are averred in the bill indicating that the agent of appellant company misrepresented anything except the possible worth of the policy, and this value or worth was a matter largely to be determined by the business judgment of Jacob E. Breland, the insured. Furthermore, appellee was not the beneficiary in the first policy, and never possessed any rights in the proceeds thereof. The court cannot say that Jacob E. Breland, the deceased, would have applied any additional sum derived from the old policy toward the payment of premiums upon the new. He in fact received sixteen dollars and forty four cents in cash, and he might have elected to pocket any additional sum derived from the surrender of the old contract. Another contingency confronts us. Jesse Breland, the beneficiary in the old policy, had a vested right in the old policy and the proceeds forming the consideration for the release and surrender thereof. Jesse Breland has nowhere expressly agreed that any additional value derived from the old policy shall be applied toward the payment of a third premium on the new. In the nature of things complainant cannot so charge.

There is another difficulty for the complainant which suggests itself. If there was either fraud or mistake whereby the insured was induced to take out a new contract or policy, the insured, upon discovering the fraud or mistake, might himself sue to rescind the new contract; but, upon doing so, the parties would be reinstated to their rights under the old policy. This suit was not framed to accomplish any such result. This is a suit upon the new policy, the only one in which complainant has any rights. We reiterate that no obligation either by statute or contract rested upon appellant to agree with the insured upon any "surrender charge" for the old policy, and in arriving at the value of this "surrender charge" the insured, within reasonable limitations, certainly had the right to exercise his business judgment. This disposes of the first ground for relief as stated in the bill.

But the demurrer in this case is a general demurrer, and if the complainant, under any view, has stated a case, the demurrer was properly overruled. The demurrer admits the positive allegations of the bill that appellant had in its hands belonging to the insured fifty-six dollars in dividends and thirty-five dollars as the insured's proportion of the surplus earned or accrued. The demurrer admits that the insured was entitled to these funds unless they were disbursed or applied in accordance with one of the options given in the policy. It is contended for the appellant that a policy-holder has no right to control the company in applying or paying the surplus, and that the bill does not expressly charge any portion of the surplus had been in fact set aside or placed to the credit of this policy.

Appellant further contends that under the terms of the policy the insured was required to elect within three months how he wished his dividends paid or applied, and, failing to do so, after notice, "the dividends shall

be applied to the purchase of paid-up additions as per option three,'' and that the bill does not show that the insured exercised his option. From this the inference is attempted to be drawn by appellant that any dividends have already been applied to the purchase of paid-up additions. On this point it is the duty of the court to ascertain the intention of the parties and to enforce their contract. When this is done, however, we believe the bill states grounds for relief. The contract expressly and plainly says that:

''The proportion of the surplus accruing upon this policy shall be ascertained and distributed annually and not otherwise.''

It also expressly provides that dividends are payable ''on the 12th day of November of each year.''

In the light of these provisions of the contract itself, the allegations of the bill are plain that the company had in its possession at the time of the death of the insured a sun in excess of the past-due third annual premium.

Was it the duty of the company to apply these funds toward the payment of that premium? This question has not, so far as we know, been answered by this court. But we say unhesitatingly, that under the facts of this case and under the contract here under observation, equity demands the application of the funds in a way to avoid a forfeiture of the policy. If the dividend and the earned surplus, then due and payable, are applied toward the liquidation of the third premium, the policy is kept alive. If the company fails to apply the funds, the policy is forfeited. In reference to the dividends, counsel for appellant contend that the contract provides that these dividends shall go toward the purchase of additions or dividend insurance; that this additional insurance or ''paid-up additions'' is insurance fully paid for, requires no further premiums to be paid on it, and operates as additional insurance which cannot be for-

feited even when there is no liability on the main policy. It is well settled that the law abhors a forfeiture, and it is reasonable to assume that the option accorded the insurance company to apply the dividends to the purchase of paid-up additions contemplated a situation where the policy was being kept in force, and not a situation in which the insured is in default for nonpayment of a premium. To apply the funds in accordance with the option given appellant would mean a little additional insurance and a forfeiture of the main contract, and to apply the funds towards the liquidation of the past-due annual premium would mean the keeping alive of the main contract. The very object of the contract is to provide insurance for the full amount of two thousand dollars and here the company had it in its power to apply the insured's money in a way to keep alive the main contract and in doing so to conserve ordinarily the best interests of both parties. The policy itself stipulates that the "paid-up additions may be surrendered at any time for a cash value which shall not be less than the original cash dividends." This manifested an intention to make the dividends available in cash to the policy holder. Our view of this question is supported by the case of *Haas* v. *Mutual Life Insurance Co.*, 90 Neb. 808, 134 N. W. 937, Ann. Cas. 1913B, page 919, where the court, by LETTON, J., says:

"The provisions in the policy giving options to the insured after a default in the payment of premiums on the day fixed must be considered in connection with the law as to the nature of the life insurance contract and the fact of there being no forfeiture clause in the policy. While Haas might have exercised one of these options, he did not choose to do so. He was not bound by his contract so to do, but had the right to rely upon the main, and not upon the ancillary or subordinate, stipulations, if it seemed best to him."

There is nothing on the face of the bill to indicate that the insured received a written notice requiring him to elect the option accorded him by the contract or that appellant has made any disposition of the funds at all. The rule, with its proper limitation, is correctly stated in 19 Am. & Eng. Encl. Law (2d Ed.), p. 50, as follows:

"The rule has been broadly laid down that a life insurance company cannot insist upon a forfeiture for the nonpayment of a premium where it has in its possession dividends belonging to the insured sufficient to pay the premiums at maturity. The rule is especially true where the dividends are by the terms of the policy made applicable to the payment of premiums, or where it is shown to be the custom of the company in its dealings with the insured to appropriate the dividends for this purpose. But profits earned and not declared as dividends cannot be treated as funds in the hands of the company applicable to the payment of a premium."

The holding also finds support in *Girard Life Ins. Co.* v. *Mutual Life Ins. Co.*, 97 Pa. 15. The opinion on page 27 of 97 Pa., says:

"That it is inequitable and against the policy of the law to permit an insurance company to forfeit a life policy for nonpayment of a premium, when such company has in its possession the money of the assured to an amount covering the premium, and which it has the power to apply to its payment."

This case was again before the court, as shown by the reported case (100 Pa. 172). The holding announced in the first opinion was reaffirmed, with the limitation that the profits or dividends earned, "but not declared as dividends or otherwise," could not be treated as funds applicable to the payment of the premium. In the present case the policy-holder by contract had a right to his proportion of the surplus annually, and the right to a payment of the dividends annually. The bill

charges that dividends and surplus were in fact earned, and if the policy contract was complied with, they were declared or set apart and made available to the insured annually. The funds alleged to be due are more than sufficient to pay the third annual premium. The bill then requires an answer. We do not think that provision of the contract, stipulating that the policy shall be forfeited for nonpayment of any annual premium militates against the views here expressed. It is elementary that all of the provisions of a contract must be read and construed together. The decree of the learned chancery court will be affirmed, and the cause remanded, with leave to appellant to answer the bill within thirty days after receipt of the mandate by the clerk of the court below.

*Affirmed and remanded.*