So. 157

EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. ROBERTS.

8 Div. 365.

Supreme Court of Alabama.
Dec. 22, 1932.

Howze & Brown, of Birmingham, for appellant.

Harris Burns, of Birmingham, and Bradshaw & Barnett, of Florence, for appellee.

10

BOULDIN, J.

The insurance policy sued upon, denominated a "Guaranteed Investment Policy—Ordinary Life," stipulated for "Additional Indemnity in case of death from Accident" in a sum equal to the face amount of the life policy, $10,000.

Liability vel non for this additional indemnity is the matter of litigation before us.

The death of the insured in an automobile accident is not questioned. The defense set up is a forfeiture of the policy as to this additional indemnity for nonpayment of premiums, this demand not being within the protection of the extended insurance provisions of the life policy.

The issue tried was presented by replication No. 12, as follows:

"That on to-wit: March 11th, 1930, defendant apportioned to the policy sued on an annual dividend of $197.00 which said dividends according to the terms of said policy at the option of the insured should be '(1) Paid in cash; or (2) applied toward the payment of any premium if the remainder of the premium is duly paid; or (3) applied to the purchase of paid up additional insurance payable in a single sum at the death of the insured (without additional indemnity or total and permanent disability permits); or (4) left to accumulate at 3% interest compounded annually.' That prior to March 11th, 1930, the insured had procured a loan on said policy in the sum of to-wit $500.00. That on to-wit April 29, 1930, the insured requested and instructed the defendant that said dividend in the sum of $197.00 be applied as a credit on said loan; that the defendant contrary to the request and instruction of insured failed and refused to so apply said dividend, that is to say the sum of $197.00, but without notice to the insured to make an election under the terms of the policy attempted to apply the same to the purchase of paid up additional insurance payable in a single sum at the death of the insured. And plaintiff says that the action of the defendant in so attempting to apply said dividend was contrary to the terms of the policy sued on, contrary to the express instruction and request of the insured and was a nullity.

"And plaintiff further says that the sum of $197.00 remained in the hands of the defendant on to-wit Sept. 11, 1930, and on to-wit Oct. 11, 1930. That a semi-annual premium of $214.80 accrued on said policy on Sept. 11, 1930. And plaintiff avers that on to-wit Oct. 11, 1930, and within the grace period of 31 days provided by said policy the insured mailed to defendant a letter in words and figures as follows, to-wit: 'Oct. 11, 1930, Equitable Life Insurance Co., Birmingham, Ala. Gentlemen: I enclose herewith my check for $100.00 which is part pay on my premium due for $214.00. I cannot pay the full amount at this time and I hope you will accept this and extend the time for me until I can get the balance. Would like for the dividend to apply at this time if this is the period when it is to be paid. Yours very truly, J. C. Roberts.'

"And plaintiff avers that defendant received said letters, and that the same revoked the previous request of insured to apply said dividend as a credit on his said loan.

"That at the time of the receipt of said letter defendant had not applied said dividend as a credit on said loan.

"Plaintiff says defendant accepted said $100.00 as a part payment on said premium accruing on Sept. 11, 1930, and that said sum of $100.00 together with the amount of said dividend to-wit $197.00 was more than enough to pay said premium. That it was the duty of defendant to have applied said money so in its hands to the payment of said premium and

defendant will be held to have so applied the same. Wherefore plaintiff says said policy was in full force and effect on January 18th, 1931, the date the insured was killed."

The facts are not in dispute.

The policy was kept in force by regular payment of premiums to and including the semi-annual premium of $214.80 due March 11, 1930, which was paid in full. On that date an annual dividend of $197 was declared. Notice of same had been duly given in order that insured might direct the disposition of this dividend under the terms of the policy.

Touching such "annual dividends" the policy provided:

"The proportion of divisible surplus accruing upon this policy shall be ascertained annually. Beginning at the end of the second policy year, and on each anniversary thereafter such surplus as shall have been apportioned by the Society to this policy shall at the option of the Insured (or assignee if any), be either—

"1. Paid in Cash; or, 2. Applied toward the payment of any premium if the remainder of the premium is duly paid; or, 3. Applied to the purchase of paid-up Additional Insurance payable in a single sum at death of the Insured (without additional indemnity or total and permanent disability benefits); or, 4. Left to accumulate at 3% interest, compounded annually. If a higher average annual rate is earned, this accumulation may be increased by an interest dividend as determined and apportioned by the Society. Such accumulations will be payable upon the maturity of this policy or on any anniversary of its register date.

"Unless the Insured (or assignee if any) shall elect one of the foregoing options within three months after the mailing by. the Society of a written notice requiring such election, the dividend shall be applied to the purchase of paid-up Additional Insurance (Option 3)."

On April 29, 1930, within the three months' period stipulated, the insured wrote to the insurer, at the Birmingham office, the following letter:

"In regard to my dividend of $197.00 coming to me on this policy as of date March 1, 1930, which [wish] to say that I would like for you to credit this dividend on my loan against this policy.

"There is a balance due on the premium of $.80, which I sent you, which I failed to include in the check. I am inclosing you herewith my check for $.80 to take care of this item."

This request was duly received, but by oversight was misfiled, overlooked, and never complied with, and at the expiration of the three months' period, the company converted, or undertook to convert, the dividend of $197 into paid-up insurance, under automatic alternative above quoted.

The next semiannual premium was due September 11, 1930. On October 11, next to the last day of grace, the insured remitted $100 with a letter as follows: "I am enclosing you herewith my check for $100.00 which is part pay on my premium due for $214.00. I cannot pay the full amount at this time and I hope you will accept this and extend the time for me until I can get the balance. Would like for the dividend to apply at this time if this is the period when it is to be paid."

The check was received and cashed by the company.

On October 13, 1930, the company wrote the insured:

"If you will kindly sign the enclosed Application for Extension and return it to us, we will be very glad to allow you until Jan. 11 to pay the balance of the premium.

"Dividends are payable under your policy on March 11, of each year. Therefore, no dividend is payable as of Sept. 11, 1930."

The inclosed application was executed and an extension agreement executed by the company, stipulating, in effect, that the $100 should be held as a deposit, that upon failure to pay the deferred portion of the premium at the expiration of the extension period, January 11, 1931, all rights under the policy should be the same as if such extension had not been made, and the deposit, less certain deductions, returned to the insured.

The letter of October 13th, above, the application for extension, and the extension agreement, were, on objection of plaintiff, rejected as evidence. We have recited same to disclose the succession of events, and later deal with the rulings of the court presented for review.

The remaining portion of the premium was not paid at the expiration of the extension period, and the insured came to his death one week later.

■■ By the great weight of authority dividends duly declared, or other monies of the insured in the possession of the insurer, available for the payment of premiums, should be so applied to prevent a forfeiture of the policy.

In Reliance Life Ins. Co. v. Hardy, 144 Ark. 190, 222 S. W. 12, 13, the rule declared in the former case of Union Central Life Ins. Co. v. Caldwell, 68 Ark. 505, 58 S. W. 355, was reaffirmed and quoted as follows: "The doctrine does not arise out of the peculiar facts of any particular case. It does not depend upon contract, custom or course of dealing for its existence and potency. It has its origin in that fundamental principle of justice which will compel one who has funds in his hands belonging to another, which may be used, to use such funds, if at all, for the bene-

fit, and not to the injury, of the owner; for his consent to the one, and dissent to the other, will be presumed. * * * These principles are founded upon reason and common fairness and honesty, and they will have application wherever it becomes necessary to prevent a forfeiture, which is favored neither at law nor in equity.' "

In the Hardy Case this rule was applied to disability benefits which were due the insured under a separate policy, and which had not been paid at the time of default in payment of the premium.

This principle, as a declared rule of law, has been announced and applied to varying facts in many cases, and treated as the prevailing rule by text-writers. Reliance Life Insurance Co. v. Hardy, supra; Kern v. Western Life Indemnity Co., 192 Ill. App. 96; Fogg v. Morris Plan Ins. Soc., 115 Misc. 491, 188 N. Y. S. 867; McNaughton v. Des Moines Life Ins. Co., 140 Wis. 214, 122 N. W. 764; Mutual Life Insurance Co. of New York v. Breland, 117 Miss. 479, 78 So. 362, L. R. A. 1918D, 1009–1014; Clark v. Iowa State Traveling Men's Association, 156 Iowa, 201, 135 N. W. 1114, 42 L. R. A. (N. S.) 631, and notes; Great Southern Life Insurance Company v. Jones (C. C. A.) 35 F.(2d) 122; Halliday v. Equitable Life Assurance Society, 54 N. D. 466, 209 N. W. 965, 47 A. L. R. 446; Northwestern Mutual Life Ins. Co. v. Barker's Ex'x, 241 Ky. 490, 44 S.W.(2d) 292; Joyce on Insurance, § 1166; 32 C. J. 1308; 37 C. J. 486.

This court, by many decisions, is in accord with the prevailing rule that insurance contracts are construed favorably to the insured, and forfeiture provisions are to be strictly construed as against the insurer. Washburn, Adm'r v. Union Central Life Ins. Co., 143 Ala. 485, 38 So. 1011; Manhattan Life Insurance Co. v. Parker, 204 Ala. 313, 85 So. 298.

We therefore approve, as the law of insurance contracts, the rule declared by the weight of authority; and accordingly hold that where the insurer, at the time of default in the payment of premium, has in his hands dividends duly declared, sufficient to meet such premium, or unpaid portion thereof, and which have not been theretofore otherwise applied in accordance with the terms of the policy, or by mutual consent, a legal obligation is on the insurer to apply such dividends to the payment of the premium in order to avoid a forfeiture of the policy.

We do not read the case of McKinley v. National Benefit Life Ins. Co., 223 Ala. 545, 137 So. 450, as opposed to the doctrine generally recognized to the effect that declared dividends must be applied on premiums to save a forfeiture. The McKinley Case was dealing with pleadings only, and held that replication No. 3 in that case did not show such an obligation. Among other things, that replication alleged the dividends had not been paid nor applied to premiums, and were still in the hands of the insurer, but did not aver they had never been distributed in some other manner for the benefit of the insured under the terms of the policy, and so held by the insurer.

■ Without dispute the insured had elected to have the dividend in question applied as a cash payment on the policy loan, and given directions accordingly. So far as defendant was concerned this direction had not been complied with, but, to the contrary, a different application was made, or attempted to be made under the terms of the automatic alternative in the policy.

The replication alleges that by a certain letter therein set out the insured had revoked his direction or election.

The evidence does not support this allegation.

The correspondence, of which this letter was a part, clearly discloses the insurer had in mind a semiannual dividend, if any, available at that time. The record does not disclose that the insurer, in his lifetime, ever knew but that his direction as to this prior annual dividend had been complied with. The natural inference is to the contrary. If he had then known of a different application by the insurer, his subsequent acts would have ratified same.

■ The correspondence following this letter, including the application for extension of time and its execution, should have been admitted, when offered by defendant, on this issue of revocation, vel non, presented by the replication. Its rejection was error.

For entire failure to prove revocation, a material averment of the replication as framed, the defendant was due the affirmative charge, as requested. For its refusal the judgment must be reversed.

We refrain from any discussion of other questions strongly argued by counsel. We merely cite Commercial Fire Ins. Co. v. Allen, 80 Ala. 571, 1 So. 202, dealing with one question upon which counsel differ as to the law.

■ Counts 2 and 3 of the complaint were good against demurrer.

True, the Code form of complaint on a life policy, without more, is not applicable to accident policies. The counts disclose that death was due to accident as defined in the policy. Other averments common to actions on either a life or an accident policy may be averred in Code form. The statute, in effect, so provides. Code, § 9531.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.