No. 34,177

Addie M. Anderson, *Appellant*, v. The Liberty Life Insurance Company, of Topeka, *Appellee*.

(87 P. 2d 499)

Opinion filed March 4, 1939.

*Max Wyman* and *Erskine Wyman*, both of Hutchinson, for the appellant.
*Otis S. Allen* and *George S. Allen*, both of Topeka, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action on a life insurance policy. The quarterly premium due had not been paid. Interest on loans to the insured were also due at the same time. The policy had a certain loan value remaining but not sufficient to pay the premium and the interest. Plaintiff, being the beneficiary named in the policy, contended that it was the duty of the insurance company to use a credit which the insured had on the books of the company—on account of dividends not withdrawn—to cover the premium and the interest, and that if this had been done the policy would have been in force and effect at the death of the insured. The trial court held for the company, and the beneficiary appeals.

On January 26, 1920, the insurance company issued to Carl Arthur Anderson a "twenty-pay life" insurance policy in the sum of $5,000. In 1925 the insured received a loan from the company upon the terms stated in the policy and assigned the policy to the company as collateral security for the payment of the loan and interest. At various times thereafter when premiums or interest due were not paid, the company used remaining loan values for taking care of the premium and interest and thus the policy was kept from lapsing. This it was obliged to do under the terms of the policy. On January 26, 1937, a quarterly premium of $43.65 was due. On January 14, 1937, the company sent a notice to the insured of the premium to be due on January 26, and on January 27, the day after the premium became due, the company sent the insured a notice relative to cancellation of the policy for nonpayment of premium and notice of intention to cancel the policy as provided in the statute (G. S. 1935, 40-410; 40-411). The premium not being paid, the company notified the insured on February 28, 1937, that the policy had lapsed for nonpayment of premium. Interest on the loans in the amount of $28.95 was also due. On January 26, 1937, the due date of the premium, the policy had an unused loan value of $18.83. Payment of the quarterly premium and the interest on the loan in the total sum of $72.60 was necessary to keep the policy alive. On the books of the company on January 26, 1937, the insured had a credit of $83.66 on account of the 1931 dividend of $40.25 and the 1937 dividend of $31.10, which had not been withdrawn, and an accumulated interest thereon of $12.31.

Action was brought on the policy in the district court of Reno

county, Kansas. Jury was waived and the case tried by the court. The case was taken under advisement on June 3, 1938, and on September 17, 1938, the court found for the defendant together with costs totaled at $13.10. Motion for new trial was filed and overruled, and the case is regularly here on appeal.

Plaintiff contended that the company should have used the $83.66 dividend credits, together with the unused loan value of $18.83, making a total of $102.49, in order to take care of the quarterly premium and the interest due. If this had been done the life of the policy would have been extended to the next quarterly premium date, or April 26, 1937. The company treated the policy as having lapsed and sent no notice of premium due in April. Plaintiff says that since no notice was sent in April the life of the policy was extended for another six months, or until October 26, 1937, under the provisions of the statute (G. S. 1935, 40-410). The insured died on August 12, 1937.

The question here presented is whether the company was under obligation to use the fund which had been set aside on its books to the credit of the insured on account of dividends not withdrawn in payment of the premium and interest due on January 26, 1937.

Let us examine the terms of the policy and other essential facts in the case. The policy provided that in case any premiums were not paid when due and the policy had on that date unused loan value sufficient to cover the premium, such credits were to be used in order to keep the policy from lapsing. This had been repeatedly done by the company by thus advancing the loan value. The policy contained no agreement that dividends declared and not withdrawn by the insured would likewise be used to cover unpaid premiums. It did contain this provision:

"Beginning at the end of the second policy year, and continuing until the end of the fifth policy year, the company shall annually ascertain, apportion and distribute such profits to which this policy and all such policies, as a separate class are entitled, and in the following manner: One-half shall be paid in cash and one-half carried in the unassigned surplus of the company; after which time the full amount of the yearly dividend, based on the profits for that year, shall be (1) paid in cash; (2) applied toward payment of premiums; or (3) left to accumulate at four percent interest, compounded annually."

The record shows on various occasions when the insured had failed to pay the premium when due the company had written him asking that he permit the use of unclaimed dividends then to his

credit for taking care of the premium, and that upon two or more occasions at least the insured had signed cards directing that this be done. Subsequent to January 26, 1937, the company sent several notices to the insured suggesting reinstatement of the policy and enclosing reinstatement forms. The insured made no reply. On March 18, 1937, the company wrote to the insured urging reinstatement and stated among other things—

"Won't you and Mrs. Anderson please sign the enclosed loan papers, have both signatures witnessed, you sign the dividend notices opposite option two, complete the enclosed application for reinstatement by answering all questions, dating, signing, having your signature witnessed, and return these to us with your remittance of $13.75? Immediately upon approval, your policy will be reinstated and protection restored to you.

"Won't you please, Mr. Anderson, take care of this at once?"

Again on May 13, 1937, the company wrote another letter to the insured of similar import:

"Won't you and Mrs. Anderson sign the enclosed loan papers, have both signatures witnessed, you sign the dividend notices opposite option two, and answer all the questions on the application for reinstatement, date it, sign it, have your signature witnessed and return these papers to us with your remittance of $13.75? Immediately upon approval your insurance will be reinstated, your investment regained, and protection restored to you. Won't you please, Mr. Anderson, take care of this before June 1?"

Among other things the dividend notices referred to in the letters stated on one side of the card:

"The owner of the policy is hereby required to elect the manner in which the said dividend shall be applied as herein provided, within three months after the date this notice was mailed, notifying the company in writing of his election; otherwise the dividend will be left with the company (option 4) to accumulate at not less than four percent interest, compounded annually, subject to withdrawal at any time."

On the reverse side of the dividend notice card were listed four options, option 2 reading as follows:

"To apply the dividend to the premium due on the policy, such disposition being hereby acknowledged."

Option 4 read as follows:

"To leave the dividend to the credit of the policy to accumulate at not less than four percent interest, compounded annually, subject to withdrawal at any time."

The insured made no reply.

It is the position of the appellant that even though the insured had not elected to have the company use the dividend credits for

paying the premium, it was the duty of the company to use such dividend credits "for the best interest of the insured," and that it was to his best interest to use them to pay premiums and prevent the lapsing of the policy. The company contends that it not only had no duty to so use the dividend credits, but that it had no right to do so in the absence of such direction from the insured.

Appellant predicates her case on the doctrine broadly stated in many cases that the law will not permit an insurance company to work forfeiture of a policy for nonpayment of premium where it has funds in its hands belonging to the insured sufficient to meet the premium. We find no fault with that proposition but, on the contrary, subscribe to it, but after examining all the cases cited by appellant, and many others, we do not find that the doctrine is applicable to the present case. With few, if any, exceptions the cases which lay down the broad principle just stated are cases where there is provision in the policy which expressly or by reasonable implication imposes an obligation upon the insurer to use funds or credits of the insured to pay premiums; or where no notice of dividends had been sent to the insured; or where a "custom" had been established—that is to say, where the company had upon previous occasions so applied dividends and thus led the insured to believe that it would continue to do so; or where dividends had accrued but had not been set aside for any special purpose and constituted simply a debt on the part of the company to the insured. Appellant cites, for instance, the case of *Union Central Life Ins. Co. v. Caldwell*, 68 Ark. 505, 58 S. W. 355. In the course of the opinion in that case the court stated:

"For more than twenty years the uniform practice of the company under the policy had been to apply the dividends to the loan. . . . She had no notice that the company would proceed differently under the policy from what it had done for all those years with reference to dividends." (p. 524.)

In the case of *Equitable Life Assur. Soc. of the U. S. v. Roberts*, 226 Ala. 8, 145 So. 157, the court adopts the rule that—

"Where the insurer, at the time of default in the payment of premium, has in his hands dividends duly declared, sufficient to meet such premium, or unpaid portion thereof, and which have not been theretofore otherwise applied in accordance with the terms of the policy, or by mutual consent, a legal obligation is on the insurer to apply such dividends to the payment of the premium in order to avoid a forfeiture of the policy." (p. 12.)

It will be noted that the court there includes as a part of the rule the qualification that dividends duly declared "have not been there-

tofore otherwise applied in accordance with the terms of the policy or by mutual consent." As we have already indicated, the insured in the case at bar had been repeatedly notified by the company that unless he gave direction to use the dividend for payment of premium it would be placed on deposit in accordance with the terms of the policy, insured had failed to give any directions and the fund had been so placed on deposit. More than that in the case just cited (*Equitable Life Assur. Soc. of the U. S. v. Roberts,* supra), the court stated:

"Without dispute the insured had elected to have the dividend in question applied as a cash payment on the policy loan, and given directions accordingly. So far as defendant was concerned this direction had not been complied with, but, to the contrary, a different application was made, or attempted to be made under the terms of the automatic alternative in the policy.

"The replication alleges that by a certain letter therein set out the insured had revoked his direction or election.

"The evidence does not support this allegation." (p. 12.)

The third paragraph of the syllabus of the case is as follows:

"In action on life policy, evidence did not show insured revoked election to have dividend applied on policy loan so that dividends could be applied to premium."

In the case of *Insurance Co. v. Breland,* 117 Miss. 479, 78 So. 362, upon which appellant strongly relies, the court stated:

"There is nothing on the face of the bill to indicate that the insured received a written notice requiring him to elect the option accorded him by the contract or that appellant has made any disposition of the funds at all." (p. 489.)

Again in *Mutual Life Ins. Co. v. Henley, Guardian,* 125 Ark. 372, 188 S. W. 829, the court said: "It had been the custom of the company to apply the dividend towards the payment of the annual premium." (p. 377.)

In further support of her position appellant calls attention to a clause in a paragraph of the policy entitled "Loans," reading as follows: "The loan may be increased by the cash value of dividend additions credited to this policy, if any." The words "dividend additions" appear to have a well-accepted meaning. They refer to additions made to the face of the policy by the use of dividends for that purpose. The words are fully discussed and interpreted by Chief Justice Hughes in *Williams v. Union Central Co.,* 291 U. S. 170, 78 L. Ed. 711. See, also, *Manufacturers' T. Co. v. Equitable L. Assur. Soc.,* 279 N. Y. S. 457. They cannot be interpreted as

dividends added directly to the loan value and the policy provides no authority in the company to so use them.

In view of all the facts in the case we conclude that the company had no obligation, if indeed it had any right, in this case to apply the fund which it had set aside to the credit of the insured for payment of the premium in default. The notices repeatedly sent to the insured called attention specifically to the options available for disposition of the dividends, and it was stated definitely and repeatedly to him that unless he directed otherwise the dividends would be kept on deposit to his credit drawing interest and subject to withdrawal at any time. On previous occasions he had signed the notice cards directing that the dividends be used to pay particular premiums due. Although frequently importuned to do so in this instance, he made no reply. It is unnecessary to cite cases which hold that where the insured has elected to leave dividends with the insurer and the dividends have been set aside to his credit, the company has no obligation to make other use of them. It might well be contended that his failure to make his own election in view of the notices sent him virtually constituted election to leave the dividends on deposit. In such a view of the matter certainly the insurer has no right to apply dividends to pay premiums. (*Thomas v. New York Life Ins. Co.*, 81 F. 2d 614; *Elton v. Northwestern National Life Ins. Co.*, 192 Minn. 116, 255 N. W.. 857.) The dividends had been placed on deposit and were drawing interest. Let us assume that he did not desire to keep the policy alive but did desire to leave the dividends with the company drawing interest and subject to withdrawal at any time. Certainly he had a right to do that. But suppose in spite of its repeated statements to him that the dividends would be kept on deposit to his credit as an interest-bearing fund unless otherwise directed, the company had proceeded, without any such direction from him, to apply them to the payment of premiums and that sometime later he had called upon the company for payment of the dividends. Under such circumstances he would clearly have been entitled to recover the fund with interest from the company.

None of the cases cited by appellant or appellee is exactly on all fours with the case at bar. There are many cases, however, tending to support the view just expressed. (*Manufacturers' T. Co. v. Equitable L. Assur. Soc.*, supra; *Harden v. Insurance Co.*, 206 N. C. 230, 173 S. E. 617; *Williams v. Union Central Co.*, supra.)

Appellant urges that the letters of March 18, 1937, and May 13, 1937, heretofore referred to, were confusing in that they referred to a "remittance of $13.75" necessary to reinstate the policy, and that the insured may have gotten the impression from such letters that such amount was all that was necessary, and that it could be taken care of by application of the unused loan value of $18.83 to the credit of the policy when the premium was due. It will be noted, however, upon examination of the letters, that the insured was required not only to make this remittance of $13.75 but to return the dividend notice with signature "opposite option two." Option two was a direction to use the dividend credits for payment of the premium. We find, therefore, that the letters were not misleading.

The judgment of the trial court is affirmed.

HARVEY and SMITH, JJ., dissenting.