ing that fact, he must also have known that the bank could release nothing more than what it had acquired from Romain. The court below was correct, therefore, in concluding that the lease did not operate upon the last installment of rent, which accordingly still belonged to the plaintiff. In addition to these two defenses, the defendants also insist that the landlord, being bound by the lease to make repairs to the premises, refused to do so, so that for that reason the defendants were forced to abandon them on the 2d of September; and they claim that by the terms of the lease they were released from any further liability for rent under the clause which provided that, if the buildings should be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, the tenants should not be liable to pay rent for the time after such destruction or injury, and might thereupon quit and surrender possession of the premises. It was shown that the lessees abandoned the premises on the 2d of September, 1890. The court held that, if the premises became untenantable because of the failure of the landlord to comply with his contract and put them in repair, so that a condition arose which made it necessary for the tenants to remove, and they did so, the plaintiff must fail in his action. Finally, the question was submitted to the jury in this form: "You must determine whether, on or about the 1st of September, 1891, the hotel in question was, without fault of the tenants, in a condition so as to make it untenantable and unfit for occupancy, and by reason thereof the tenants left and surrendered it. If 'yea,' your verdict will be for the defendant; if 'nay,' your verdict will be for the plaintiff." No exception was taken to that part of the charge. The jury found a verdict for the plaintiff, and under the charge they must have found that the premises had not become in such a condition that they were untenantable, and for that reason the defendants fail also in that portion of their defense.

For these reasons we conclude that the judgment and order were correct, and must be affirmed, with costs to the respondent. All concur.

---

(58 App. Div. 80.)

MEEDER v. PROVIDENT SAV. LIFE ASSUR. SOC. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

1. INSURANCE—PAYMENT OF PREMIUM—ESTOPPEL.
     Where insurer wrote the beneficiary that a premium falling due on a certain date was paid, it was estopped from thereafter claiming any benefit by reason of nonpayment, and was in no position to invoke the rule that in an action on a policy, where the complaint alleges full performance of all its conditions, proof excusing the nonperformance is inadmissible.

2. SAME—ASSIGNMENT.
     Such estoppel operated in favor of the assignee of the beneficiary's rights under the policy.

3. SAME—FORFEITURE.
     Insurer, setting up a forfeiture of a policy for nonpayment of premium on a certain date, cannot take advantage of failure to pay premium falling due after such date.

4. SAME.

Conceding that insurer, though setting up a forfeiture for nonpayment of premium on a certain date, can take advantage of failure to pay subsequent premiums, it cannot do so where the policy provides that the amount of such premium was to be determined by the insurer, and it gave no notice to insured or the beneficiary that any premium was due, or stated any amount.

Appeal from trial term, New York county.

Action by Henry H. Meeder against the Provident Savings Life Assurance Society of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

William T. Gilbert, for appellant.
Henry W. Jessup, for respondent.

McLAUGHLIN, J. On the 17th of February, 1896, the defendant issued to Charles F. W. Dambmann a policy of insurance upon his life for $3,000, payable, in the event of his death, to J. M. Drentell. On the 22d of April, 1899, Dambmann died, and thereafter this action was brought by the assignee of Drentell to recover the amount specified in the policy. In the complaint the plaintiff alleged the issuance of the policy; the death of Dambmann; the filing of the proofs of death; the assignment of Drentell of the policy and all claims thereunder to the plaintiff; and that Dambmann and Drentell complied with all the conditions of said policy on their part, "and paid, or caused to be paid, the premiums demanded under said contract to be paid." The defendant, by its answer, admitted that it issued the policy referred to in the complaint, and that the requisite proof of the death of Dambmann had been furnished, but it denied substantially all of the other material allegations. It also alleged that the policy in question ceased to be operative because of the nonpayment of the premium which fell due on the 17th of November, 1897, and by reason thereof it elected to and did declare said policy forfeited, and it thereupon became null and void and of no effect. Upon the issue thus formed, the parties went to trial, at the conclusion of which the court directed a verdict for the plaintiff for the amount claimed in the complaint, after deducting unpaid premiums, and from the judgment thereafter entered the defendant has appealed.

There is little or no dispute between the parties as to the material facts involved. From the record it appears that at the time Dambmann obtained the policy he was indebted to Drentell in a sum upwards of $3,000, which indebtedness continued down to, and existed at the time of, Dambmann's death, and, for the purpose of securing the payment of this indebtedness, the policy was taken out. By its terms, the premiums were to be paid quarterly, on the 17th day of February, May, August, and November. It was in form for one year, but contained a provision that "upon the payment on or before the 17th day of February, May, August, and November, in each succeeding policy year, of the quarterly renewal premium for

each one thousand dollars assured hereunder, according to the schedule rates of the society, less the dividends awarded thereon, the society will renew and will extend the term of the above contract of insurance for another year, and to the next succeeding anniversary of its date, during the lifetime of the insured."

Drentell testified: That in July, 1897, Dambmann went to Nova Scotia. That he knew, from previous transactions with the defendant, that the premiums upon the policy had been paid up to August of that year. That he had personally paid two premiums, and had letters from the defendant (which were introduced in evidence) showing the receipt of such payments, and that it recognized him as the beneficiary named in the policy. That, prior to making such payments, he had communicated with the company, and, having ascertained that the premiums had not been paid, sent to it the amount of premiums required under the policy. That on the 26th of November, 1897, he wrote the defendant for a like purpose, as follows: "Kindly inform me if the November premium on policy No. 74,422, on the life of C. F. W. Dambmann, has been paid. If not, kindly forward bill to me, and I shall send you check for the amount." On the following day he received a reply from the defendant, in which it said: "In reply to your favor of the 26th inst., with inquiry about policy No. 74,422 on life of Charles F. W. Dambmann, in which policy you are named as beneficiary, we would advise you that the premium due on the 17th inst. has been paid at this office." That after the receipt of this letter he assumed that the premium had been paid, and took no further action in reference to the matter. That he did not thereafter receive from the company a notice of any kind as to further premiums being due, and he made no inquiry concerning the same, until September 9, 1898, when he wrote to the company asking if there were any premiums due, and in reply received a letter which said that the policy in question "expired, in accordance with its terms, because of the nonpayment of the premium due on November 17, 1897. Should it be your desire to again be protected in this manner, we would be pleased to receive an application from Mr. Dambmann upon new papers." That he did not reply to this letter, but on the 18th of September, 1899, after the death of Dambmann, he assigned the policy, and all his right and claim thereunder, to the plaintiff. It further appeared that the plaintiff, when he took the assignment of Drentell's claim under the policy, was in possession of substantially all the foregoing facts.

The first error assigned by the appellant, as calling for a reversal of the judgment, is that the trial court erred in permitting the plaintiff to introduce evidence excusing the assured or his beneficiary for the nonperformance of the conditions of the policy, viz. the payment of the premium falling due November 17, 1897. It contends that, inasmuch as the complaint alleged full performance of all of the conditions of the policy, proof excusing performance was inadmissible. This is undoubtedly the general rule, and it is so well settled that the citation of authorities in support of it is unnecessary. But the defendant is not in a position to invoke the application of this rule as to the payment of the premium falling due on

November 17, 1897. The letter which it then wrote to Drentell, stating that the premium had been paid, then and thereafter estopped it from claiming any right or benefit by reason of such nonpayment. Drentell had the right, upon the receipt of that letter, to assume that that payment had been made, and, if it had not, then the statement of the defendant must be held to be a modification of the policy in that respect. In defendant's answer it claimed a forfeiture of the policy by reason of the nonpayment of the November premium alone. This premium the plaintiff alleged had been paid, and the defendant, having misled Drentell as to that fact, cannot be heard against him or his assignee to the contrary. It was, in legal effect, paid so far as the rights of the parties were concerned. Where one person asserts the truth of a fact to another, and that party acts upon that statement, the party asserting cannot thereafter be heard to say that what he said was untrue, when the result of such statement would be to his own benefit, and to the prejudice of the opposite party. Kenyon v. Knights Templar & Masonic Mut. Aid Ass'n, 122 N. Y. 247, 25 N. E. 299; Insurance Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841; Kenyon v. National Life Ass'n, 39 App. Div. 276, 57 N. Y. Supp. 60. In Kenyon v. Knights Templar & Masonic Mut. Aid Ass'n, supra, the headnote, which seems to fairly express the opinion of the court, is as follows:

"Any agreement, declaration, or course of action on the part of the company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

But it is urged that, if it be true that the defendant is estopped from asserting this fact against Drentell, it may nevertheless do so against his assignee; but it must be remembered that Drentell assigned to the plaintiff—which he had a right to do—his right to the policy and all claims thereunder. This placed the plaintiff in precisely the same position in which Drentell was at the time the assignment was made. He stood in his shoes, clothed with the same rights,—no more and no less.

Finally, it is claimed that the premiums falling due after November 17, 1897, were not paid. A sufficient answer to this suggestion appears in defendant's answer, in that it has not alleged such fact, and has not claimed a forfeiture upon that ground, and, if it did, it would be difficult to see how such claim would be effective, inasmuch as it took the position that the policy was forfeited by the nonpayment of the November premium. Having based its defense to the claim made by the plaintiff upon the fact that the policy became null and void by reason of that nonpayment, the rights of the parties must be determined upon the issue as thus formed by the pleadings, and, for the reason already indicated, it appears to us that the policy was not, as against Drentell or his assignee, then terminated. As to payments of premiums thereafter, it will be remembered that the policy provided that the amounts of them was to be determined by the company itself, and it does not appear that any notice stating the amount, or that any premium was due, was

:given either to Dambmann or Drentell. In the absence of such· notice, either to the assured or the beneficiary, the defendant had no .power to terminate the policy.

The judgment and order are. right, and must. be affirmed, with costs. All concur.