ILLINOIS BANKERS LIFE ASSURANCE COMPANY *v.* WILKEN.

4-2973

Opinion delivered May 1, 1933.

A. G. Meehan and *John W. Moncrief*, for appellant.

J. F. *Holtzendorff, Thos. C. Trimble, W. W. Mc-Crary, Jr.,* and *Thos. C. Trimble, Jr.,* for appellee.

HUMPHREYS, J. Appellee brought suit against appellants in the circuit court of Prairie County, Northern District, to recover on a life insurance policy issued to Thomas G. Guidos on the 3d day of May, 1926, in consideration of the payment of an annual premium of $36.50, which policy contained a paragraph providing that the insured should have a right to deposit with the insurer, in addition to the annual premium required, the sum of $31.70 for the purpose of creating a saving fund which should bear 4 per cent. compound interest per annum and which was credited to the fund at the close of each policy year. It was alleged that Thomas G. Guidos died on September 25, 1931, at which time the policy was in full force and effect.

Defendants filed an answer denying any liability on the policy, alleging that same was forfeited for failure to pay the annual premium on May 3, 1931, or during the thirty-day grace period that expired June 3, 1931.

The cause was submitted to the court, sitting as a jury, upon the pleadings and testimony adduced by the respective parties, which resulted in a judgment against appellants for $2,461.70, $295.40 penalty, together with interest on the total amount at the rate of 6 per cent. per annum from date of judgment until paid, and an attorney's fee of $350, from which is this appeal.

The annual premium on the policy was paid each year from the date thereof until May 3, 1931. The insured failed to pay the premium of $36.50 on that date. There was, however, on that date, to the credit of insured, accumulated savings in the sum of about $140, out of which the annual premium was payable. The insurer failed to apply any part of the savings fund to the payment of the premium. On the 8th day of May, 1931, the insured wrote to the insurer as follows:

"Gentlemen: I want to cash in all of my accumulated savings fund which I can cash in up to date. Please send it as soon as possible."

In answer, the insurer wrote as follows on May 15, 1931:

"We have your letter of May 8, 1931, relative to our above-numbered policy. Your policy has a savings accumulation of $140, which is subject to withdrawal. Have you, however, considered the advisability of leaving this money to the credit of the policy to pay premiums if the need arose? There might be an occasion when you would find it impossible to pay premiums, and in that case the savings fund could be used for that purpose, thus keeping the policy from lapsing and maintaining for you an insurance protection which would otherwise be lost. If you find that you must withdraw this money, you may execute and return the inclosed request for withdrawal of savings form, and we will send you the money. On the reverse side of this form please indicate how you wish to continue your policy in the future."

The insured executed and returned the form for withdrawal and received a check inclosed in the following letter, dated June 4, 1931:

"According to the request for withdrawal of savings form which you returned to this office, we are inclosing herewith our check, No. 12969, for $140, which refunds to you the savings fund accumulation to the credit of your above-mentioned policy. Will you please advise us as to how you wish to continue your policy in the future in accord with the three options set forth in our letter of May 15? We are glad to have been of service to you in this instance and shall be pleased to administer to your insurance needs in the future."

The policy contained a grace period of thirty days, in which the premium might be paid after the due date. It also contained two clauses relative to the application of the accumulated savings fund to the payment of the annual premium as follows:

"(c) Should the insured fail to pay any premium on this policy when due, the savings fund accumulation to the credit of this policy shall, without action on the

part of the insured, be applied to such premium so long as the amount of the savings fund to the credit of the policy shall be sufficient to pay two quarterly premiums.''

''(f)  There shall be no obligation on the part of the association under provisions (c) or (e) as recited above, except to apply the accumulation to the credit of this policy to the payment of premiums as they fall due and to mail to the insured a receipt for each premium paid thereunder.''

The judgment of the trial court was based upon the finding that, under clauses (c) and (f) in the paragraph entitled ''savings fund'' in the policy, it was the duty of the insurer to pay the annual premium of $36.50 on May 3, 1931, out of the accumulated savings. The appellant contends that, under the clauses, no duty rested upon it to apply any part of the savings fund to the payment of the annual premium until the expiration of the 30-day grace period, which would not be until June 3, 1931. The language of the clauses is too plain to bear such a construction. They plainly state that such duty rests upon the insurer when the premium falls due. There can be no question that the premium became due May 3, 1931. The grace period of 30 days was a privilege extended to the insured to pay the same after maturity. If the intention had been to make the application at the expiration of the 30-day grace period, unambiguous language could have been employed to express such intent. Certainly, it cannot be said that the use of the words ''when due'' in clause (c) and ''as they (premiums) shall fall due'' in clause (f) meant some other date than the maturity date. Under clause (c), the insurer obligated itself to make the application on the due date without any action on the part of the insured.

''The rule is that insurance companies cannot declare forfeiture of policies for the nonpayment of premiums when they have sufficient funds in their hands belonging to the insured to pay the premium, and the duty rests upon them to use the funds to pay the premiums and thereby prevent forfeitures.'' *Security Life Insurance Company* v. *Matthews,* 178 Ark. 775, 12 S. W. (2d) 865. So, even if the contract had not provided for

the application on the due date, the law would have made the application. There was ample in the savings fund to pay the premium on the due date. The subsequent withdrawal of more than the insured was entitled to did not and could not work a forfeiture of the policy. The insured, in the letter of date May 8, 1931, did not ask to withdraw more than he was entitled to. No specific amount was requested. He only requested to withdraw all he could withdraw. The amount thereof was left to the insurer, and the fact that it sent more than it should have sent cannot work a forfeiture of the policy. When it sent the check on June 4, its letter did not contain a statement that the policy had been forfeited by failure to pay the last premium, but, on the contrary, it contained an interrogatory to the insured as to what arrangement he intended to make about the payment of his future premiums. If the policy had then been forfeited by reason of the insured's failure to pay the premium due on May 3, 1931, it would not have propounded such an interrogatory to the insured. Appellant simply made a mistake in overpaying the insured, and cannot take advantage of its mistake to declare a forfeiture of the policy and thereby avoid the payment thereof.

No error appearing, the judgment is affirmed.

SMITH, J., (dissenting). The policy sued on contained a table showing the amount of the savings accumulations at the end of each year it had been kept in force. The insured not only had this information, but he was advised that this value at the time of the correspondence was $140. The premium was due May 3, with thirty days grace. Did the insured write, on May 8th, that he intended to withdraw his savings, less the premium then due but not delinquent? He did not. He stated that he wanted "to cash in all of my accumulated savings fund which I can cash in up to date," and that he wanted this money as soon as possible. Is there any indication that he wished to pay the premium then due and have the balance remaining sent him? The insurer did not so interpret this letter; nor do I.

The reply to this letter told the insured how much he might withdraw, but urged him not to do it. Still urg-

ing the insured to keep the insurance in force, the letter inquired how he would do so if he withdrew his accumulations.

The letter from the insurer failed to persuade the insured not to withdraw his accumulations, and he executed and returned the form for withdrawal, and received a check for the full amount of the accumulations, which was enclosed in a letter advising him that the check "refunds to you the savings fund accumulations to the credit of your above-mentioned policy." Can the insured, or his beneficiary, now be heard to say that he did not know that the plain and unequivocal direction contained in his first letter had been complied with? He had asked for "all of my accumulated savings," had been told what they were, and had been advised not to withdraw them. But he had the right to do this, and he did it, and, having withdrawn and appropriated these savings, he could not expect his premium to be paid with the money thus withdrawn and appropriated.

Now, this policy did contain clause (c), set out in the majority opinion, and it was there provided that, "without action on the part of the insured," the savings fund accumulation should be used to pay premiums. What does this language mean? Plainly that, if the insured did not otherwise direct, the accumulations would be applied to premiums so long as they sufficed to pay them. It certainly did not mean that the accumulations were to be so used when the insured had otherwise directed, that direction being to send him the money, and to do so at once. Certainly, he could not withdraw the money and pay the premiums with it, too, no more than he could eat his pie and have it, too.

The insurer made no mistake. It only paid the insured what he was entitled to withdraw, and had the right to demand, and what he did demand, and did receive.

I therefore dissent, very respectfully, but very earnestly, and am authorized to say that Justice McHaney concurs in this dissent.