Manufacturers Trust Company, as Successor Trustee by Merger with Chatham Phenix National Bank and Trust Company under Agreement with Joseph I. Rosenblum, Dated February 13, 1929, Respondent, *v.* The Equitable Life Assurance Society of the United States, Appellant.

First Department, May 3, 1935.

*Peter C. Mann* of counsel [*Alexander & Green,* attorneys], for the appellant.

*Milton Kunen* of counsel [*Kaye, Scholer, Fierman & Hays,* attorneys], for the respondent.

UNTERMYER, J.   Summary judgment has been granted in favor of the plaintiff, the beneficiary named in a life insurance policy issued by the defendant upon the life of one Joseph I. Rosenblum.

The insured died on December 21, 1932.   The policy provides for the payment of an annual premium of $63.90 on the third day of September in each year until the death of the insured. The face amount is payable to the beneficiary upon receipt of due proof of death, provided the policy is then in force.   The premium which fell due on September 3, 1932, was not then paid nor within the period of grace provided in the policy.   It remained unpaid when the insured died over three months later.   Notwithstanding this default, it is contended by the plaintiff that the policy was in effect at the death of the insured, because it had a cash surrender value of $333 on the date of default, and also because the defendant had in its possession accumulated dividends belonging to the insured of $359.47, which, it is claimed, it was obligated to apply either to the purchase of extended term insurance or to the payment of the premium.

The decision depends upon the interpretation to be accorded to the policy.   It provides under " Options on Surrender or Lapse "

that, after three full years' premiums have been paid, upon any subsequent default in the payment of any premium, the policy may be surrendered by the insured who may elect: (a) To receive the cash surrender value of the policy; or (b) to purchase non-participating paid-up life insurance; or (c) to continue the insurance for its face amount as paid-up extended term insurance. The insured not having made any election within three months of the default, the last-mentioned option for extended term insurance would have applied, in accordance with an express provision of the policy to that effect.

The policy further provides: " If there be any indebtedness against this policy, the cash surrender value shall be reduced thereby, the paid-up insurance shall be reduced proportionately, and the extended term insurance shall be for the face amount of the policy less the indebtedness and for such period as the reduced cash value will purchase."

On September 3, 1932, the date of the default, thirteen annual premiums had been paid and the cash surrender value of the policy was $333. At the same time there was outstanding a loan against the policy of $333, made to the insured upon the sole security thereof. Consequently, under the provisions of the policy relating to " Options on Surrender or Lapse," the cash value of $333 was offset by the indebtedness against the policy of an equal amount, the reduced cash surrender value was nil and there was no surplus available for the purchase of extended term insurance.

The plaintiff contends, however, that the defendant was not justified in applying the cash surrender value of $333 to the payment of the loan, thereby leaving no funds available for the purchase of extended term insurance. This contention is based upon a clause of the policy under the provision which relates to " Loans " and which reads as follows: " Failure to repay such loan or to pay interest thereon shall not avoid this policy unless the total indebtedness hereon shall equal the total loan value, nor until thirty-one days after notice shall have been mailed to the Insured, and to the assignee of record, if any, to their addresses last known to the Society." It is conceded that notice was not given in accordance with this provision which, the plaintiff contends, became controlling when the loan became due and was not paid. However, loans made on policies of life insurance, unlike commercial loans, do not constitute personal obligations payable at a specific date but are treated as advances against the policy repayable only out of any proceeds at maturity. (*Orleans Parish* v. *New York Life Ins. Co.*, 216 U. S. 517; *Williams* v. *Union Central Life Ins. Co.*, 291 id. 170; *Wagner* v. *Thieriot*, 203 App. Div. 757; affd.,

236 N. Y. 588.) The only event requiring notice under the provision which relates to " Loans " is where, even though there has been no default in premium, the policy is canceled because it is no longer adequate security for the loan. Here the policy was not avoided for non-payment of the loan or the interest thereon. It was avoided for failure to pay the annual premium, of which, it is not disputed, due notice was given. It thereupon lapsed and, under the contract of the parties, the loan was automatically deducted from the surrender value. The defendant then merely followed the formula with respect to loans and extended term insurance contained in the statute (Ins. Law, § 101), and in the provisions of the policy relating to " Options on Surrender or Lapse." It collected the cash value of the policy and repaid to itself the amount of the loan in accordance with the policy and also in accordance with the loan agreement executed by the insured, which provides: " Upon default in payment of any premium on said policy. In that event the total of all advances and any interest thereon shall not be repayable in cash but shall be deducted by the Society from any sum (including the surrender value of dividend additions, if any, to said policy) otherwise applicable to the purchase of paidup or extended term insurance." After this deduction was made there was no excess applicable to the purchase of extended term insurance. (Compare *Texas Life Ins. Co.* v. *Dillehay*, 79 S. W. [2d] 342 [Tex. Civ. App.])

We next proceed to consider the plaintiff's contention that the company was required to apply the $359.47 of accumulated dividends either to the payment of the premium due September 3, 1932, in order to prevent a default on the policy or to continue the policy for the amount thereof as extended term insurance. In the consideration of that question we again refer to the policy which defines the rights of the parties in this respect. Therein provision is made for the determination and distribution annually of the divisible surplus accruing on the policy, and as to such dividends four options are accorded to the insured: (1) To receive them in cash; (2) to apply them to the payment of premiums; (3) to apply them to the purchase of paid-up additional insurance; or (4) to leave them to accumulate at three per cent interest compounded annually with an agreement to increase the interest by any excess interest dividend that may be determined and apportioned and with a further agreement that such accumulations shall be payable upon the maturity of the policy or on any anniversary of the register date. By written notice dated September 16, 1920, the insured elected to allow the 1921 and all future dividends to accumulate with the company at interest. That accu-

mulation of dividends amounted to $359.47 at the time of the death of the insured. This fund was the property of the insured of which the defendant had no right to make any disposition except in accordance with instructions from him. Since the insured had elected not to receive payment thereof upon any anniversary of the register date of the policy, the accumulations became payable to his estate when the policy matured upon his death. There are, it is true, decisions in some jurisdictions tending to sustain the plaintiff's argument. (*Equitable Life Ins. Co.* v. *Roberts,* 226 Ala. 8; 145 So. 157; *Mutual Life Ins. Co.* v. *Breland,* 117 Miss. 479; 78 So. 362; *North* v. *National Life & Accident Ins. Co.,* [Mo. App.] 231 S. W. 665; *Illinois Bankers' Life Ins. Co.* v. *Wilken,* 187 Ark. 337; 59 S. W. [2d] 1046.) But we think the cases to the contrary (*Gardner* v. *National Life Ins. Co.,* 201 N. C. 716; 161 S. E. 308; *Elton* v. *Northwestern Nat. Life Ins. Co.,* [Minn.] 255 N. W. 857; *Straube* v. *Pacific Mutual Life Ins Co.,* 123 Cal. 677; 56 P. 546; *Cason* v. *Mutual Life Ins. Co.,* 67 Col. 199; 184 P. 296) represent the more logical and the sounder view, especially under the decisions in this State which admonish us to construe contracts of insurance very much as we would contracts of any other kind. (*Kean* v. *National Surety Co.,* 241 N. Y. 252; *Royster Guano Co.* v. *G. & R. Fire Ins. Co.,* 252 id. 75.) Here it is to be remembered that the insured was under no obligation to pay any premium on the policy. The only effect of non-payment would be that the policy would lapse. It may be, therefore, that the insured failed to pay the premium which became due on September 3, 1932, intending to permit the policy to lapse rather than to pay the premium. We do not know upon what theory the company would have power to apply his property consisting of accumulated dividends to the payment of a premium for which he was not personally liable and which he may not have desired to pay. If the defendant had done so without his consent, and indeed against the express instructions contained in the notice of election of September 16, 1920, and he had not died, it would have been liable to him for this unauthorized appropriation of his property.

In further support of its contention that the $359.47 remaining with the company operated to continue the policy as extended term insurance, the plaintiff refers to option (c) under " Options on Surrender or Lapse," as follows: " (c) To continue the insurance for its face amount (and any outstanding dividend additions) as paid-up extended term insurance for the period shown in the above Table, or for such further period, as the dividend additions (if any) will purchase, but without future participation, or right to loans, or double indemnity or total and permanent disability

benefits." It is urged that the words " dividend additions " in this clause are used interchangeably as " paid-up insurance bought with dividends " and " dividend accumulations." Therefore, it is claimed that under option (c) the sum of $359.47 continued the. policy for the face amount as extended term insurance to a period beyond the date of the death of the insured. We do not agree in this interpretation of the policy, nor are we of opinion that it presents any ambiguity. The paid-up additional insurance referred to in option (3) under " Annual Dividends " having a cash surrender value are the " dividend additions " previously credited to the policy and also having a surrender value under " Loans " and " Options on Surrender or Lapse." Dividends allowed to accumulate under dividend option (4) at compound interest (the option selected by the insured) are dividend accumulations which are cash and, being such, obviously would not have a " cash value." This distinction has several times been recognized and applied in the decisions. (*Williams* v. *Union Central Life Ins. Co.*, 291 U. S. 170; affd. 65 F. [2d] 240; *Mutual Ben. Life Ins. Co.* v. *O'Brien*, [Ky.] 116 S. W. 750; *Jefferson* v. *New York Life Ins. Co.*, 151 Ky. 609; 152 id. 780.)

The judgment and order appealed from should be reversed, with costs, and plaintiff's motion denied, with ten dollars costs.

MARTIN, P. J., MERRELL, McAVOY and O'MALLEY, JJ., concur.

Judgment and order reversed, with costs, and motion denied, with ten dollars costs.