THE NATIONAL RESERVE LIFE INSURANCE COMPANY
*v.* COLE.

4-4710

Opinion delivered July 5, 1937.

*Pryor & Pryor* and *Stone, McClure, Webb, Johnson & Oman,* for appellant.

*Partain & Agee,* for appellee.

GRIFFIN SMITH, C. J. The question presented by this appeal is whether accidental death benefits of $2,000 provided for in a supplement attached to and forming part of policy No. 8387 on the life of Jack Mayfield Cole were intended to, or by reasonable construction did, merge with and become a part of the automatic extended insurance provision contained in the principal policy.

The principal policy is for $2,000. Premiums due May 21, 1934, were paid, extending the policy and supplement to May 21, 1935, but premiums due May 21,

1935, were not paid. The assured was injured August 25, 1935, by accidental means, and on September 4, 1935, died as a result of such injuries. Appellant admitted liability on the life policy for $2,000 with the explanation that when the premium due May 21, 1935, was not paid within sixty days, the policy automatically became extended life insurance for a period substantially beyond the assured's death. It was contended by appellant, however, that when the separate annual premium due on the supplemental policy defaulted, liability under the supplement, by its express terms, ceased, and such additional protection did not become a part of the extended contract.

The application reads: '' I hereby apply to the National Reserve Life Insurance Company for a $2,000 plan ordinary life nonparticipating [policy] [with] double accident death benefit. Policy if written, unless otherwise provided for, shall bear the date of this application.''

The consideration recited in the body of the principal policy was payment in advance of an annual premium of $29.56.

The supplement, in consideration of an additional annual premium of $5, contains the following provision: ''If the beneficiary shall become entitled to indemnity on account of the death of the insured under the above policy, and if such death shall have resulted within ninety days thereafter from bodily injuries caused directly, independently and exclusively of all other causes by external, violent and purely accidental means * * * the company will pay the sum of $2,000, in addition to the payments provided for in said policy, provided said policy and this supplement are in force and all premiums are paid * * * Expire. This supplement shall automatically expire when the policy to which it is attached becomes paid-up or when premium payments are discontinued by the insured; or when the policy is maintained in force under disability supplement or when the insured becomes sixty years of age.''

Paragraph three of the principal policy recites an agreement for loans, on certain conditions, to pay pre-

miums. Under "Benefits and Provisions" there are options of which the assured may take advantage after premiums have been paid for three full years.

Option (a) provides that, with respect to default after the third annual premium has been paid, then, upon written request of the assured, the company will grant paid-up life insurance of a reduced amount payable at the same time and under the same conditions as the policy would yield if kept in full force, with increasing loan or cash surrender values; or (b) "Upon due surrender of this policy by the insured or the owner, the cash surrender value will be paid in cash and the insurance terminated. The cash surrender value shall be equal to the reserve at the date of default for the face amount of this policy, computed according to the American Experience Table of Mortality with interest at the rate of 3½ per cent. per annum, less an amount having a maximum of one and one-half per centum of the sum insured at the end of the third policy year, and decreasing annually thereafter. Beginning at the end of the tenth policy year the cash surrender value shall be equal to the full reserve. Any indebtedness to the company on this policy existing at the time of the surrender shall be deducted from any such cash surrender value; or (c), if no other nonforfeiture benefits shall be elected by the insured within two months from the due date of the premium in default, the company will grant extended insurance reckoned from said date, without participation in the earnings and without the right to loans, for an amount equal to the face of this policy."

Option "c" is referred to in the policy as "Automatic Extended Insurance."

It is further provided that the extended insurance "will be such as the cash surrender value obtainable under paragraph (b), less any indebtedness due the company, will purchase when applied as a net single premium at the attained age of the insured on the mortality and interest basis as stated herein."

Table "A" on page two of the policy shows by specific enumeration the benefits on each one thousand dollars.

At the end of the eighth year (in the instant case May 21, 1935) the assured, having defaulted on his premiums, could have procured paid-up insurance for $304; or he could have borrowed $100; or he could have surrendered the policy and received $100 in full settlement. To exercise either of these options there was the requirement that an affirmative action be taken; the assured's preference must have been expressed in writing.

But—

As an additional privilege reserved to the assured, he had the right to remain quiescent. He had the privilege of silence. He selected a policy or contract under the terms of which the net accumulated reserve would be used as a single premium in the purchase of extended insurance. The amount of such insurance privilege varied from year to year, and its values were enhanced by the payment of premiums and the lapse of time.

As an essential or requisite to the determination of optional or automatic rights—as a basis from which these rights would be computed—the contracting parties stipulated that Table "A" should control, and this table provides what the policy values shall be for each one thousand dollars of insurance.

It now becomes necessary to determine whether the face of the policy is $2,000 or $4,000; or, admitting the face value to be $2,000, does the increased sum become a part of the general contract and draw to it the optional and automatic values, irrespective of provisions in the supplement that accidental death benefits automatically expire when the policy to which it is attached becomes paid up, or when premium payments are discontinued by the insured?

Appellee says: "The face of the policy, of course, is $2,000 if death results from ordinary causes, and is $4,000 if by accidental means. * * * It is clear that the cash and loan value was far more than ample to keep the whole policy in force, and further that by express terms of the policy, in default of any election by the insured as to an option, same would be extended for the full face amount for a period of almost seven years. * * *

By no stretch of the imagination could it be said that the additional payment for accidental death was not a part of the face of the policy issued upon the application." (Citing *Missouri State Life Ins. Co.* v. *Miller,* 163 Ark. 480, 260 S. W. 705; *Pfeiffer* v. *Missouri State Life Ins. Co.,* 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600; *Security Life Ins. Co.* v. *Matthews,* 178 Ark. 775, 12 S. W. (2d) 865; *Illinois Bankers Life Ins. Co.* v. *Wilken,* 187 Ark. 337, 59 S. W. (2d) 1046; and *Metropolitan Life Ins. Co.* v. *Stewart,* 188 Ark. 903, 68 S. W. (2d) 1017.)

It is our opinion that the face of the policy is $2,000. This limitation appears on the first page of the contract in this language: "If death occurs while this policy is in full force and effect, as provided herein, the amount payable as face amount shall be $2,000." The supplement refers to "the above policy" as No. 8387, and provides that if death be caused by accidental means, the company will pay the sum of $2,000 "in addition to the payments provided for in said policy." The application called for "An ordinary nonparticipating life policy" for $2,000, with double accident death benefit. The accident benefit feature required an additional annual premium of $5, and became nonoperative if such premium should not be paid within the period of grace. While the two papers will be read together, and in so far as possible will be construed together, effect must be given to the independent features of each, and there is not any language to justify a finding that the face of the policy is $4,000.

The policy provides, and the plan under which it is written clearly shows, that paid-up insurance, and extended insurance, may be *purchased*. In each instance the amount so purchased, or the term of extension, is limited to the cash surrender value. In the Table of Values a paid-up policy for $304, under the agreement of the parties, was equivalent to extended insurance for six years, 310 days. If the insured had lived after defaulting in premium payments, it could hardly be urged that his accumulated reserve would purchase paid-up insurance for $608, the amount convertible under a $4,000 policy. The supplemental contract negatives this

construction with a provision that it shall automatically expire "when the policy to which it is attached becomes paid-up."

In Cooley's Briefs on Insurance, vol. 4, pages 3818-19, it is said: "In computing the amount which is available for the purchase of extended insurance, the premiums paid are taken as the basis for determining the net value."

The "net value" of a policy is equal to the reserve, and means that part of the annual premium which, according to the American Experience Table of Mortality, must be set apart to meet the company's obligations to its insured.

Appellant, in treating appellee's insurance as extended, acted in obedience to the contract. The kind of insurance appellee would be entitled to if premiums were not paid was set out in the policy, and appellee retained the policy and at all times was charged with knowledge of its terms. The right reserved in his behalf was predetermined as a benefit to prevent forfeiture in the event he should fail, intentionally, by force of circumstances, or through oversight, to meet his premium obligations. All of appellee's accumulated reserve, less a $60.00 loan, was applied as a single premium to purchase extended insurance. The insurance so purchased *was paid-up* for the full period of the credit, and according to all contractual intendments the policy to which the supplement was attached became paid-up. No premiums were thereafter due, nor could such policy, at any time during its term, or at the expiration thereof, be converted into insurance of any other kind. The transaction, with respect to obligations other than payment at death, or cash surrender value, was at an end, and the assured had nothing more to do.

Appellee insists that the assured had a right to rely upon the plain provision of the policy, and says that "The company notified him of nothing to the contrary." The insurer is not required to give the insured notice to make an election upon his failure to pay a premium. Cooley's Briefs on Insurance, vol. 4, p. 3815.

It is true that the terms "extended insurance," and "paid-up insurance" are distinct, but each *is* paid up, as was the principal policy in the instant case.

In *New York Life Ins. Co.* v. *Moose,* 190 Ark. 161, 78 S. W. (2d) 64, where a life and disability policy provided that upon default in payment of the annual premium, the policy should be continued automatically as temporary insurance from the date of default for such term as the policy's cash surrender value, less any indebtedness thereon would purchase, unless within three months from default insured exercised one of two options, either to take paid-up insurance or the cash surrender value of the policy, it was held that, "on failure to exercise either of these options, the insured was automatically limited to temporary insurance for a term which the cash surrender value would purchase."

We hold, therefore, that the face of the policy was $2,000; that the double indemnity supplement, while a part of the primary contract, contained independent or severable provisions not in conflict with provisions of the principal contract, but operating while the supplemental premium was being paid; that the supplement's values ceased when the policy to which it was attached became paid-up, and that it was paid-up under the extended insurance agreement. The rights of appellee were limited to the face of the principal policy, and since this amount was paid, nothing is recoverable by the instant suit.

Reversed and dismissed.