AMERICAN NATIONAL INSURANCE COMPANY *v.* KIDD.

4-8213                               204 S. W. 2d 788

Opinion delivered October 6, 1947.

Rehearing denied November 3, 1947.

1080

*William V. Brown, William V. Brown, Jr., Will Steel* and *Wayman, Dibrell & Greer,* for appellant.

*George F. Edwardes,* for appellee.

Griffin Smith, Chief Justice. The question is whether it was proper for the Court to direct a verdict for the plaintiff.

Essential facts, as shown by stipulation, are that on January 11, 1943, American National issued its policy of insurance on the life of Henagan A. Kidd for $2,000 with Mattie M. Kidd as beneficiary. The quarterly premium of $15.44 due January 9, 1946, was paid. However, there was failure to meet a similar obligation due April 9th, nor was it discharged during the grace period. At default the cash surrender or loan value was $38. The insured died May 19, 1946, from accidental injuries.

The trial Court's view was that a duty rested upon the insurer to apply and charge as a loan an amount equal to the delinquent premium. Terms of the policy, introduced as an exhibit, must control.

It provides that after premiums have been paid for three years loans will be made on security of the policy at the rate of $19 per one thousand of insurance. An option is that the Company may defer a loan (except where proceeds are to be applied in payment of premiums) for a period not in excess of ninety days after application is made.

In directing the jury to find for the plaintiff, the Judge held that "even though the contract does not mention it," a duty rested upon the Company to use any funds in its possession belonging to the insured "to extend the life of this insurance."

Correctness of this ruling depends upon what the contracting parties had agreed to when the policy was written.

Under the general heading "Non-Forfeiture Provisions" a subsection of the policy reads: "Paid-up Insurance. If the cash value [as heretofore defined] is not selected this policy shall automatically continue as nonparticipating paid-up life insurance payable in a single sum at the same time and under the same conditions as this policy, except as to premium payments, for the amount as shown in the 'Table of Guaranteed Values.' But any indebtedness on this policy will reduce the amount of paid-up insurance in such proportion as the indebtedness bears to the cash value at the due date of the premium default."

The table of guaranteed values then follows, printed and typewritten quite prominently, after which loan provisions appear as a part of the same sheet. We are not concerned with actual loans. It was stipulated that no application was made, nor was there an attempt to revive the policy. There was likewise an agreement that the fund conditionally available was sufficient to purchase $106 in paid-up insurance, and this amount was tendered prior to suit. Each side moved for a directed verdict and neither requested any other instruction.

Although the policy became effective January 9th, appellee treats the contract as one requiring "quarterly" premium payments, thus applying a policy year as distinguished from a calendar year. This is unimportant. From language creating loan privileges not in excess of the cash surrender value, appellee undertakes to rationalize that the term "default" has reference to the period beginning with expiration of the grace period rather than due date of the premium; hence, it is contended, the addition of thirty-one days to April 9th would carry the insurance to May 11th. Since death did not occur until May

19th, " . . . [the insured] had thirty-one days after default to exercise the available option." [1]

We think that a reading of all applicable phrases of the policy requires the construction that "default" means a failure to pay premiums when due. To this default was added a grace period of thirty-one days. Nor are we left to speculate on construction in this respect. Section 13 of Privileges and Provisions expressly states that "If any premium is not paid on or before the date it falls due, such premium is in default." Payment might have been made within thirty-one days from the default period, but it was not.

This presents the question, What was the status after the grace period had terminated as expressed by terms of the contract? The non-forfeiture provisions make answer. First, the policy may be delivered to the Company and it will pay the insured the cash surrender value. Secondly, a loan may be applied for. If proceeds are to be used in paying premiums it must be effectuated expeditiously, but if not intended for application in that manner, such loan may be deferred for ninety days after application is made. But, if the cash value is not selected —and, of course, application for a loan would exclude the presumption of such selection—" . . . this policy shall be automatically continued as non-participating paid-up life insurance." The amount of insurance (in this case $106 by agreement) is that purchasable under the terms of the particular policy when the loan or cash surrender value is applied as a single premium.

Extended insurance and paid-up insurance were discussed in *National Reserve Life Insurance Co.* v. *Cole,* 194 Ark. 433, 108 S. W. 2d 471, where it was said that although the two are distinct, each *is* paid up. Extended insurance carries with it the principal amount of the policy (less contractual deductions) for a determined

---

[1] The paragraph relied upon to support this argument is: "After three full years premiums have been paid hereon and within thirty-one days of default in the payment of any subsequent premium, one of the following equivalent options, subject to any indebtedness hereon, may be elected by filing a written request with the Company at its home office, accompanied by the policy."

period, while paid-up insurance is for the amount existing values will purchase, but it is in effect during the full period of the insured's life without payment of additional premiums.

The principal involved in the case at bar was presented in *Life & Casualty Insurance Co. of Tennessee* v. *Goodwin,* 189 Ark. 1073, 76 S. W. 2d 93. The provision construed was that if default in payment of premium should be made after the policy had been in force three years, it would "automatically at time of lapse be unconditionally commuted to non-forfeitable paid-up insurance. . . . " There was a subjoined option, referred to in language deleted from the preceding quotation, permitting the insured to receive the policy's cash surrender value or paid-up insurance, provided demand should be made within ninety days from commutation. Effect of the Goodwin decision is to say that where a contract creates options, but expressly provides that upon failure to exercise the right of selection a stipulated result attends and becomes binding upon the insurer, neither the insured nor his beneficiaries can thereafter complain that a different treatment should have been given, when circumstances disclose that action on the part of the insurer would in the particular case have been more advantageous to a beneficiary.

Appellee contends that it would be unjust and inequitable for a court to permit the Company to enforce the contractual language relating to *automatic* commutation, hence there can be no lapse or forfeiture. It is trite to emphasize the rule that equity *follows* the law; and where legally permissive relationships have been established between competent parties by a contract which defines reciprocal duties and obligations, we are not at liberty to substitute for these commitments a new obligation, and then impose it as an equitable variant merely because one of the principals neglected to do something that developments proved would have been more advantageous.

The judgment is reversed and the cause is remanded with directions to enter judgment for the item of $106 only.